Ray Edwin BILLINGSLEA, Appellant,

v.

The STATE of Texas, Appellee.

No. 923–87.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 22, 1989.

John H. Hagler, (on appeal only), Dallas, for appellant.

John Vance, Dist. Atty. & Patricia Poppoff Noble, Gary A. Moore & John D. Nation, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

Appellant was charged with the offense of injury to an elderly individual pursuant to V.T.C.A. Penal Code, § 22.04(a)(1). A jury found the appellant guilty as charged and assessed his punishment at 99 years in the Texas Department of Corrections. The appellant's conviction was subsequently reversed and his acquittal ordered. *Billingslea v. State*, 734 S.W.2d 422 (Tex.App.— Dallas 1987). We affirm the judgment of the court of appeals.

The State's petition for discretionary review was granted pursuant to Rule 200(c)(3) and (c)(5), Tex.R.App.Proc., to consider the following grounds: First, whether the court of appeals erred in holding that the indictment charging the appellant was defective because it did not allege a statutory duty to act; and second, whether the court of appeals erred in finding the evidence insufficient to support appellant's conviction because he had no statutory duty to act.

We note at the outset that the Legislature recently amended the statute under which the appellant was charged and initially convicted. The amended version of V.T.C.A. Penal Code, § 22.04, effective

September 1, 1989, is set forth fully in fn. 7, infra. We are compelled, however, to review this case in light of the statute as it existed at the time of this offense. To do otherwise would violate the constitutional prohibition against ex post facto laws. U.S.C.A. Const. Art. 1, sec. 9, cl. 3; Vernon's Ann.Tex. Const., Article 1, § 16. See also *Pope v. State*, 509 S.W.2d 593 (Tex.Cr. App.1974) (error to instruct jury that defendant could be found guilty of injury to a child where statute not effective until after offense committed).

## I.

Since the State assails the court of appeals' ruling on the sufficiency of the evidence, a brief review of the facts is in order. Appellant, his wife, and son lived with Hazel Billingslea (also referred to as the decedent), appellant's 94 year old mother, in a small two story frame house in Dallas. Hazel Billingslea's home had been her son's residence since approximately 1964. Appellant's only sibling was his sister, Katherine Jefferson, a resident of New Mexico. Virginia Billingslea (the decedent's granddaughter), Katherine Jefferson's daughter, lived approximately fifteen blocks from her grandmother's Dallas' home. Virginia Billingslea was raised by Hazel Billingslea and had a close relationship with her. Accordingly, she kept in regular contact by telephone and by occasional visits to her grandmother's house.

Unspecified frailties of old age affecting the elder Mrs. Billingslea forced her to become bedridden in March, 1984. Granddaughter Virginia, unaware of her grandmother's condition, made several attempts to visit her during the ensuing weeks. On each occasion her uncle (appellant) "testily" informed her that her grandmother was "asleep." Undaunted, Virginia attempted to reach her grandmother by telephone, only to be threatened by her uncle on at least two occasions to "keep [her] goddamned motherfucking ass out of him and his mother's business or he would kill [her]."

After all attempts to visit her grandmother failed, Virginia contacted her moth-er (appellant's sister), Katherine Jefferson, in New Mexico. Mrs. Jefferson in turn contacted the Dallas Social Security Office and requested a formal inquiry into her mother's welfare.

Velma Mosley with the Adult Protective Services section of the Texas Department of Human Resources testified that she received a report from the Social Security Office on April 20, 1984, requesting that she check on the elder Mrs. Billingslea. A few days later, Ms. Mosley, accompanied by two Dallas police officers and a police social service employee, proceeded to Mrs. Billingslea's house.

They came upon the appellant in the front yard. After some discussion, he reluctantly allowed them to enter the premises. Upon entering, they were assailed by the strong, offensive odor of rotting flesh permeating the household. While one of the police officers remained downstairs with the appellant, who wanted to know "what these motherfuckers were doing in his house," the social worker and police officer made their way upstairs. Upon entering the bedroom, they found Hazel Billingslea lying in bed, moaning and asking for help. Ms. Mosley testified that the stench was so overwhelming that she was forced to cover her face. Ms. Mosley pulled back the sheets to examine Mrs. Billingslea. Nude from the waist down, Mrs. Billingslea appeared weak and in a great deal of pain.

Ms. Mosley discovered that part of Mrs. Billingslea's heel was eaten away by a large decubitus (bedsore). Other decubiti on her hip and back appeared to have eaten through to the bone. When Ms. Mosley attempted to raise Mrs. Billingslea from the bed to continue her physical examination, "she moaned so much till I didn't look any further." Mrs. Billingslea was immediately transported to Parkland Hospital in Dallas.

Dr. Frase, at that time Chief Medical Resident at Parkland Hospital, examined Mrs. Billingslea. He testified that she was severely cachectic, i.e., that she had suffered severe muscle loss. Her mental state was one of near total disorientation, and

she had apparently been unable to feed herself for some time. In addition to the decubiti, second degree burns and blisters were found on her inner thighs, caused by lying in pools of her own urine. Maggots were festering in her open bedsores.

Dr. Frase testified that weeping bedsores as severe as those he found on Hazel Billingslea would have taken anywhere from four to six weeks to develop. He further testified that until her death Mrs. Billingslea required large dosages of narcotics to relieve her pain. In his opinion, the bedsores, burns, blisters, and loss of muscle resulted in serious bodily injury indicative of overall neglect of Mrs. Billingslea in the months prior to her death.

## II.

■ The question of whether criminal liability may be imposed for omissions against elderly individuals is one of first impression in Texas.[1]

The defendant was charged under V.T.C.A. Penal Code, § 22.04. Until September 1, 1981, § 22.04 covered only offenses against children 14 years of age or younger. That year, the Legislature added "elderly individuals 65 years of age or older" to the definition of those protected by § 22.04:

Injury to a Child or Elderly Individual. (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger or to an individual who is 65 years of age or older:

  ° (1) serious bodily injury;

  (2) serious physical or mental deficiency or impairment;

  (3) disfigurement or deformity;

  (4) bodily injury.

Deleting the formal requisites, the indictment is as follows:

[That the defendant did] then and there intentionally and knowingly engage in conduct that caused serious bodily injury to Hazel Billingslea, an individual over 65 years of age, said conduct being by the following act and omission, to wit: the said defendant failed to obtain medical care for Hazel Billingslea, the natural mother of the said defendant, who lived in the same house as the defendant, and the said Hazel Billingslea was at said time physically unable to secure medical care for herself.[2]

In its petition, the State contends that a duty to act need not be embodied in a *statute* for § 22.04 to apply. Instead, the State argues that the duty to act in behalf of an elderly person may be derived from legal or common law duties as would arise from the factual, not necessarily familial, relationship of the parties. Limiting § 22.04 to explicit statutory duties, according to the State, "would vitiate the intent of the statute." See also Justice LaGarde's dissenting opinion in *Billingslea*, supra, at 425. Relative to the present case, the State contends that the appellant owed a duty of care to the decedent because he voluntarily assumed primary responsibility for caring for his mother who was unable to care for herself, and by assuming that responsibility, prevented others from coming to her aid. According to the State, the indictment is legally sufficient because it alleges facts giving rise to appellant's duty and failure to act pursuant to that duty. Consequently, they argue, that the court of appeals erred in holding that the indictment was fundamentally defective.

---

1. In *Kelly v. State*, 748 S.W.2d 236 (Tex.Cr.App. 1988), this Court decided a § 22.04 case involving an unprovoked attack by a middle aged man against a 79 year old individual, eventually resulting in the elderly man's death. *Kelly* is distinguishable from the instant case, however, since it involved an affirmative act on the part of the defendant, not an omission or failure to act.

2. Although the indictment was couched in terms of an "act or omission" on the part of the defendant, the offensive conduct was recited as omission: "The defendant failed to obtain medical care [for the decedent]." While § 22.04 unquestionably imposes criminal liability for *acts* committed against elderly individuals, see *Kelly*, supra, fn. 1, the allegation that a punishable "act" occurred is absent from this indictment.

While we agree with the State that the 1981 amendments to § 22.04 reflect the Legislature's intention to penalize omissions toward elderly persons, the indictment is nevertheless fundamentally defective for failing to include a statutory duty imposing a punishable omission.

■ An "omission" is defined in the Penal Code as a failure to act. V.T.C.A. Penal Code, § 1.07(a)(23). The Penal Code's foundation for criminal omissions may be found in § 6.01, which states that a person commits an offense if he "voluntarily engages in conduct, including an act, omission, or possession." Subsection (c) provides that "a person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to perform the act." Stated another way, (1) a statute must provide that an omission is an offense, or (2) a statute otherwise prescribes a duty to act, and a subsequent failure to act pursuant to that duty is an offense. Since § 6.01(c) is stated in the disjunctive, it appears to provide alternative grounds for finding a criminally punishable omission. In reality, however, only the second clause is substantive.

The first ground is obscure because it purports to allow a penal statute to make an omission an offense merely by stating that "an omission is an offense." This simply begs the question of what constitutes an omission. Logic dictates that in order for there to be an omission, there must be a corresponding duty to act. As one commentator noted, "giving legal effect to [the first] portion of 6.01(c) would abolish the requirement of a legal duty altogether." Goodall, D., *Penal Code Section 22.04: A Duty to Care for the Elderly*, 35 Baylor Law.Rev. 5809, 596 (1983).

The Practice Commentary to V.T.C.A. Penal Code, § 6.01(c), offers the following interpretation of the first clause of Subsection (c): "many offenses proscribe omissions to act, and when they do the first branch of the rule permits the imposition of criminal responsibility for the omission. Examples of such offenses include Sections 25.03 (interference with child custody), 25.05 (criminal nonsupport), [and] 38.08 (permitting or facilitating escape)."

Notably, each of these provisions provides the duty to act and the omission within the parameters of the specific penal proscription. For example, § 38.08, Permitting or Facilitating Escape, provides that "an official or an employee *that is responsible* for maintaining persons in custody commits an offense if he intentionally, knowingly, or recklessly permits or facilitates the escape of a person in custody." [3] Similarly, § 25.05, Criminal Nonsupport, provides that "an individual commits an offense if he intentionally or knowingly *fails to provide support for his child younger than 18 years of age* or for his child who is the subject of a court order requiring the individual to support the child." Thus, each omission is predicated upon a duty to act; both elements of which are found within the same statute.

In neglect cases, the focus has been upon the second ground, which must be read in conjunction with a corresponding statute specifying a duty to act. Since no provisions of the Penal Code at the time of this offense included a duty to provide care for another person, the duties were typically derived from other statutes outside of the Penal Code. The Practice Commentary, supra, offers the following illustration:

If the offense itself does not penalize an omission, 'there must be a violation of some duty [to perform the omitted act] imposed by law, directly or impliedly, and with which duty the defendant is especially charged ...' *Anderson v. State*, [27 Tex.App. 177] 11 S.W. 33, 34 (Ct.App. 1889). The second branch codifies the common law rule, but narrows it to encompass only duties imposed by *statute* ... [A] niece's failure to feed her invalid aunt, who starves to death as a result, is not guilty of criminal homicide because the niece has no statutory duty of support. Contractual duties, or those arising from a special relationship, or fact situation, are thus excluded and will not

---

**3.** Emphasis supplied is ours unless indicated otherwise.

support the imposition of criminal responsibility.

*Id.*

Analogous to the offense of injury to an elderly person, child abuse and neglect cases demonstrate how the second branch of § 6.01(c) has been applied. For example, in *Ronk v. State*, 544 S.W.2d 123 (Tex. Cr.App.1976), this Court held that an indictment charging injury to a child was fundamentally defective because it failed to allege a necessary element to the offense, i.e., it failed to allege a relationship between the defendants and child which would have placed the defendants under a statutory duty to secure medical treatment for the child. The corresponding duty to act was found in V.T.C.A. Family Code, § 12.04(3), which imposes a duty on parents "to support the child, including providing the child with clothing, food, shelter, medical care, and education; ..."

Similarly, in *Smith v. State*, 603 S.W.2d 846 (Tex.Cr.App.1980), the mother and the stepfather were charged under § 22.04 of burning, striking, and denying adequate food and medical care to a young boy. This Court agreed that the allegation "by then and there denying the said Michael Franks of food and nourishment and adequate medical attention" should be construed as alleging omissions, but held the "omissions" portion of the indictment defective in that it failed to allege a statutory duty to act pursuant to the Family Code. As to the allegations of conduct of burning and striking the child, however, the indictment was sufficient because they constituted acts, not omissions. Criminal responsibility for acts does not require an underlying duty of any kind. The Court noted that "parents and non-parents alike may commit the offense of injury to a child by such acts as striking and burning."[4]

And, in *Lang v. State*, 586 S.W.2d 532 (Tex.Cr.App.1979), we reversed the defendant's conviction based upon a fundamentally defective indictment because it failed to state, pursuant to § 22.04, that the victim was a child 14 years or younger. The appellant's conviction was overturned on this basis in spite of the defendant's guilty plea and judicial confession. Although §§ 12.04 and 4.02 of the Family Code require parents to care for their minor children, Penal Code § 22.04 limits that duty to children 14 years old or younger.

While the above cases seem to have allowed reprehensible conduct to go unpunished on the basis of a defective indictment, it is indisputable that those accused of an offense are entitled to sufficient notice of the charges against them. While other States may imply duties or derive them from the common law,[5] under the laws of this State notice of an offense must invariably rest on a specific statute. This notion is firmly rooted in the evolution of Texas criminal jurisprudence. Since the days of the Republic and early statehood, Texas courts have been prohibited from allowing common law duties to form the basis of criminal sanctions. See, e.g., *Republic v. Bynam*, Dallam 376 (1840) (Texas statutes intolerant of constructive offenses and constructive punishments); *Cain v. State*, 20 Tex. 355 (1857) (prosecution is prohibited for what was an offense at common law, but not made penal by our statutes). That longstanding prohibition is specifically embodied in our Penal Code, which provides that "conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." V.T.C.A. Penal Code, § 1.03(a).

■ Moreover, penal provisions which criminalize a failure to act without informing those subject to prosecution that they must perform a duty to avoid punishment

---

4. The defect as to omissions in the indictment did lead to reversible error, however, because of the reliance placed on it in the charge to the jury. *Smith*, supra, at 847.

5. See Goodall, *Penal Code Sec. 22.04*, supra, at 592, fn. 20, noting that in *State v. Mason*, 18 N.C.App. 433, 197 S.E.2d 79 (1973), the North Carolina Court of Appeals upheld the manslaughter conviction of parents charged with failing to provide proper care for their child, basing their decision on the ground that the defendants omitted to perform a legal duty owed their child based on a common law relationship.

are unconstitutionally vague.[6] Where an indictment in Texas fails to allege the deceased child's age, or fails to allege a parent-child relationship, thereby invoking a concomitant *statutory duty* to act in behalf of the child, a conviction based on that indictment is void. Similarly, although the indictment herein alleged sufficient facts to imply both a duty to act and an omission under the common law, the indictment is fundamentally defective in the absence of an allegation reciting a concomitant statutory duty to care for an elderly person. Accordingly, the indictment could not have alleged a statutory duty for the appellant to act in behalf of his ailing parent because no such duty existed.

As one commentator noted:

If no one is under a statutory duty to act toward an elderly person, then how can a court choose to prosecute B for the death of A instead of prosecuting X, a neighbor, or Y, A's sister, or Z, the Governor? In a jurisdiction like Texas which does not allow common law duties to form the basis for criminal actions, the duty to care for A must therefore rest either on all persons alive at her death or on no one, since the duty has not been statutorily assigned to any particular person.

See Goodall, D., supra, at 602.

While children may have a moral duty to care for their elderly parents, moral imperatives are not the functional equivalent of legal duties. Since we do not recognize legal duties derived from the common law, V.T.C.A. Penal Code, § 1.03(a), supra, and since no one was assigned a statutory duty to care for an elderly person, the version of § 22.04 relative to omissions toward elderly individuals under which the appellant was indicted is unenforceable. Consequently, the indictment charging the appellant with "failure to obtain medical care" for his mother is fundamentally defective. The State's first ground for review is overruled.

### III.

The State's second ground for review contends that the court of appeals erred in holding the evidence insufficient to support the appellant's conviction. In light of the foregoing discussion, it is axiomatic that the State failed to establish an essential element of the offense, namely, the duty to act, because no such duty existed. Accordingly, the State's second ground for review is overruled.

### IV.

Fortuitously, the Legislature identified the problematical application of § 22.04 as applied to omissions toward elderly persons and recently amended the statute.[7] If anything, the amendments to § 22.04 clearly

---

**6.** See, e.g., *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (California statute requiring loiterers to carry "credible and reliable" identification or be subject to penalty unconstitutionally vague for failure to clarify meaning of "credible and reliable"); *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (Los Angeles city ordinance requiring those convicted of felony to register with the city held unconstitutionally vague; due process allowed defendant to plead ignorance of the law as a defense where "circumstances which might move one to inquire as to the necessity of [taking affirmative action] are completely lacking."). *Id.,* at 229, 78 S.Ct. at 243.

**7.** V.T.C.A. Penal Code, § 22.04, as amended May 29, 1989, S.B. 1154, effective Sept. 1, 1989, is as follows:

Section 22.04. INJURY TO A CHILD, ELDERLY INDIVIDUAL, OR INVALID. (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, engages in conduct that causes to a child, elderly individual, or invalid individual:

(1) serious bodily injury;

(2) serious physical or mental deficiency or impairment;

(3) disfigurement or deformity; or

(4) bodily injury.

(b) An omission that causes a condition described by Subsections (a)(1) through (a)(4) of this section is conduct constituting an offense under this section if:

(1) the actor has a legal or statutory duty to act; or

(2) the actor has assumed care, custody or control of a child, elderly individual, or invalid individual.

(c) in this section:

(1) "Child" means a person 14 years of age or younger;

(2) "Elderly individual" means a person 65 years of age or older;

(3) "Invalid individual" means a person older than 14 years of age who by reason of age or physical or mental disease, defect, or inju-

suggest that the Legislature perceived the paradoxical futility of applying the former law: there could never be a failure to perform that which no one had a statutory duty to perform in the first place. The recent action taken by the Legislature in amending the statute to correct the previous statute's defect further underscores our conclusion that the version of § 22.04 under which the appellant was convicted was unenforceable. Nevertheless, we must adhere to the law as it existed at the time of the offense. Accordingly, we affirm the judgment of the court of appeals.

McCORMICK, P.J., not participating.

WHITE, J., dissents.

ry is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself.

(d) The actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child, elderly individual, or invalid individual.

(e) An offense under Subsection (a)(1), (2), or (3) of this section is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a felony of the third degree.

(f) An offense under Subsection (a)(4) of this section is a felony of the third degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a Class A misdemeanor.

(g) An offense under Subsection (a) of this section when the person acts with criminal negligence shall be a Class A misdemeanor.

(h) A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections. Section 3.04 of this code does not apply to criminal episodes prosecuted under both this section and another section of this code. If a criminal episode is prosecuted under both this section and another section of this code and sentences are assessed for conviction under both sections, the sentences shall run concurrently.

(i) It is an affirmative defense to the prosecution under Subsection (b)(2) of this section that before the offense the actor:

(1) notified in person the child, elderly individual, or invalid individual that he would no longer provide any of the care described by Subsection (d) of this section; and

(2) notified in writing the parents or person other than himself acting in loco parentis to the child, elderly individual, or invalid individual that he would no longer provide any of the care described by Subsection (d) of this section; or

(3) notified in writing the Texas Department of Human Services that he would no longer provide any of the care set forth in Subsection (d) of this section.

(j) Written notification under Subsection (i)(2) or (i)(3) of this section is not effective unless it contains the name and address of the actor, the name and address of the child, elderly individual, or invalid individual, the type of care provided by the actor, and the date the care was discontinued.

(k)(1) It is a defense to prosecution under this section that the conduct engaged in by act or omission consisted of:

(A) reasonable medical care occurring under the direction of or by a licensed physician; or

(B) emergency medical care administered in good faith and with reasonable care by a person not licensed in the healing arts.

(2) It is an affirmative defense to prosecution under this section that the act or omission was based on treatment in accordance with the tenets and practices of a recognized religious method of healing with a generally accepted record of efficacy.