The STATE of Texas, Appellant,

v.

Rachel GUEVARA, Appellee.

No. 04–02–00568–CR.

Court of Appeals of Texas,
San Antonio.

May 7, 2003.

Christopher J. Hebner, Prosecutor, and Pamela C. Oglesby, Senior Prosecutor for The City of San Antonio, San Antonio, for Appellant.

Philip Benson, for Rachel Guevara.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by SARAH B. DUNCAN, Justice.

Rachel Guevara was found guilty by the municipal court of violating section

22–140(b) of the City of San Antonio Code, which provides that "[i]t shall be unlawful for a business establishment ... to allow patrons to queue on, or wait for entrance into the business establishment on the public right-of-way of the River Walk area." On appeal, the county court reversed the municipal court's judgment and dismissed the complaint, holding that section 22–140(b) is unconstitutional. We affirm, holding section 22–140(b) is unconstitutionally vague because it "criminalize[s] a failure to act without informing those subject to prosecution that they must perform a duty to avoid punishment...." *Billingslea v. State*, 780 S.W.2d 271, 275 (Tex. Crim.App.1989).

### FACTUAL AND PROCEDURAL BACKGROUND

Rachel Guevara was charged by complaint in municipal court with "recklessly and unlawfully allow[ing] patrons to queue on, or wait for entrance into [Cafe Ole] on the public right-of-way of the River Walk area, contrary to and in violation of section 22–140(b) of the City Code of the City of San Antonio." Section 22–140(b) provides as follows:

> It shall be unlawful for a business establishment, its owner, designated agent, person in charge of the premises, or owner of the property to allow patrons to queue on, or wait for entrance into the business establishment on the public right-of-way of the River Walk area.

SAN ANTONIO, TEX., CODE OF ORDINANCES § 22–140(b) (2002). The ordinance states that its "purpose ... is to preserve the safety of the visitors to the River Walk area; to reduce the number of people queuing along the River Walk area awaiting entry into a business establishment; and to promote the use of technology to summon waiting patrons to business establishments instead of queuing along the River Walk Area." *Id.* § 22–139.

At a bench trial, the City presented the testimony of Park Ranger Fidencio Liendo Castillo. According to Castillo, he was patrolling the east side of the river when he noticed people beginning to line up outside Café Ole. He therefore warned the hostess that the line needed to be moved; if not, he would return. The hostess replied, "Okay. No problem. I'll move them as soon as I can." Castillo then went over to the west side of the river. While there, he observed that a line remained outside Café Ole; and pedestrians were having a hard time getting around a baby stroller parked at the front of the line. Approximately thirty minutes later, Castillo finished his business on the west side of the river and went back over to Café Ole. The same people he had observed earlier were still lined up. At the front of the line was the Rhodes family—Mr. and Mrs. Rhodes and their three children, one of whom was in the baby stroller Castillo had noticed earlier. Behind the Rhodes, there were at least four more Café Ole patrons. Mr. Rhodes confirmed that his family had been in line to enter Café Ole for approximately thirty minutes. After confirming that the Rhodes were indeed on the host list, Castillo entered Café Ole to notify its manager, Rachel Guevara, of the infringement. Upon entering the lobby area, Castillo noticed that it was full; however, he had no trouble getting through the lobby. After finding Guevara, Castillo issued her a ticket for violating section 22–140(b) of the City Code. When Castillo returned later in the evening, there was no line outside Café Ole.

In Castillo's view, although Guevara usually tried to comply with the ordinance, she did not try to comply with the ordinance on the day in question until after he issued the ticket. This was not the first time Castillo had advised Café Ole of the queuing ordinance. So far as Castillo knew,

Café Ole did not have a pager system and in fact had no system other than a paper list for calling people into the establishment from the line. Castillo also did not know what Café Ole's policy was regarding queuing. Castillo testified, however, that other River Walk business establishments avoid queuing by giving patrons a pager, moving them into a bar or other waiting area, or giving them a specific time to return to claim their table. Usually, because Café Ole and the other establishments along the River Walk work with Castillo to minimize queuing, he does not have any problems enforcing the ordinance.

The municipal court found Guevara guilty as charged and ordered her to pay a $100 fine and all costs of prosecution. *See id.* § 22–141. Guevara appealed to the county court, where the case was submitted on the record made in the municipal court, briefs, and oral argument. The county court ruled that Guevara was not guilty of violating section 22–140(b), that section of the City Code "is unconstitutional and therefore unenforceable," section 22–140(a) is unenforceable, and "the map referred to in Section 122–138 of Chapter 22 of the Code of the City of San Antonio is vague and does not clearly define the area intended to be designated as the public right-of-way." The City appealed.

## DISCUSSION

Guevara contends section 22–140(b) is void and unenforceable under the "void-for-vagueness" doctrine because it "fails to describe with reasonable certainty what actions constitute 'allowing patrons to queue on the public right of way.'" We agree section 22–140(b) is void for vagueness.

As set forth above, the statute defines the offense as "allow[ing] patrons to queue on, or wait for entrance into the business establishment on the public right-of-way of the River Walk area." Several of these terms are defined in the ordinance. Thus, for purposes of the ordinance, "business establishment" means "a business that contains at least one entrance along the River Walk area"; "queue" means "to form a line or arrange in a line"; "right-of-way" means "an area or strip of land, designated by the City on the map [attached to the ordinance], occupied or unoccupied by a walkway, for pedestrian traffic or other similar uses for the safe passage of pedestrians" and expressly includes "concrete walk (conc.walk), concrete slab (conc.slab), and landing"; and "River Walk Area" is given "a meaning consistent with Chapter 35, Article VII of the City Code." CODE § 22–138. Guevara makes no complaint about these defined terms; rather, she argues that section 22–140(b) "fails to describe with reasonable certainty what actions constitute 'allowing patrons to queue on the public right-of-way'" and that "'to allow' is insufficient to establish intent for the purpose of charging a person with a penal offense."

The verb phrase "to allow" is not defined in the ordinance. However, "a statute is not rendered unconstitutionally vague merely because the words or terms are not specially defined." *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App. [Panel Op.] 1978), *appeal dism'd,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979). "[T]erms not defined in a statute are to be given their plain and ordinary meaning." *Id.* "Moreover, words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite." *Id.* In the context of section 22–140(b), the well-known and commonly used meaning of "to allow" is to "neglect to restrain or prevent." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY

72 (1984). Thus, the manager of a "business that contains at least one entrance along the River Walk area" violates section 22–140(b) if she "neglect[s] to restrain or prevent" the business's patrons from "queu[ing] on, or wait[ing] for entrance into the business establishment on the public right-of-way of the River Walk area."

 As demonstrated by this explication of section 22–140(b), Guevara was charged with a crime of omission—failing to prevent patrons from queuing. "A person who omits to perform an act does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act." TEX. PEN.CODE ANN. § 6.01(c) (Vernon 2003); see id. at § 1.07(30) (defining "law" to include a municipal ordinance). Although section 6.01(c) "appear[s] to provide alternative grounds for finding a criminally punishable omission," "[i]n reality ... only the second clause is substantive." · Billingslea, 780 S.W.2d at 274. As explained by the Texas Court of Criminal Appeals:

> The first ground is obscure because it purports to allow a penal statute to make an omission an offense merely by stating that "an omission is an offense." This simply begs the question of what constitutes an omission. Logic dictates that in order for there to be an omission, there must be a corresponding duty to act.

Id. "While other States may imply duties or derive them from the common law, under the laws of this State notice of an offense must invariably rest on a specific statute." Id. at 275. "[P]enal provisions which criminalize a failure to act without informing those subject to prosecution that they must perform a duty to avoid punishment are unconstitutionally vague." Id. at 275–76.

Section 22–140(b) does not affirmatively impose on those subject to it the duty to adopt a particular system to prevent the queuing of patrons waiting for tables; indeed, it does not require those subject to the ordinance to adopt any system at all or otherwise inform them how they are to prevent queuing. Instead, like the statute involved in Billingslea, section 22–140(b) makes "an omission"—the failure to prevent queuing—"an offense merely by stating that '[the] omission is an offense.'" Id. at 274. Therefore, we hold section 22–140(b) is unconstitutionally vague and affirm the trial court's judgment.