

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0545-20

### KEVIN RATLIFF, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### LLANO COUNTY

MCCLURE, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, and WALKER, JJ., joined. KELLER, P.J., filed a concurring and dissenting opinion in which YEARY and SLAUGHTER, JJ., joined. KEEL, J., concurred in the result.

### O P I N I O N

Appellant Kevin Ratliff, the Llano chief of police, was convicted by a jury of two counts of official oppression, a third-degree felony, and one count of the misdemeanor offense of tampering with a governmental record. Tex. Penal Code Ann. §§ 39.03, 37.10.

The question we are to resolve in this proceeding is whether the evidence is sufficient to support these three convictions.

The answer to the two counts of official oppression is yes. We conclude that a rational jury could find, beyond a reasonable doubt, that Appellant subjected Cory Nutt to an arrest that he knew was unlawful and intentionally subjected Cory Nutt to mistreatment, knowing that his actions were unlawful, by criminally trespassing in Nutt's home. We therefore affirm the judgment of the court of appeals as to those two counts.

However, the answer to the conviction for tampering with a governmental record is no. We conclude the court of appeals erred in relying on omissions to support its holding because including the specific facts of the arrest in an offense report is not required by any statute or rule, and any facts not stated in the offense report were provided through video evidence. We therefore reverse the judgment of the court of appeals and hold the evidence insufficient to support Appellant's conviction for tampering with a governmental record and render a judgment of acquittal as to that count.

*Background*

This case involves four police officers—including Appellant—and the warrantless arrest for public intoxication of a man inside his recreational vehicle (RV). Cory Nutt lived in Riverway RV park. Llano police officer Grant Harden also lived at the park, three spaces down. On the night of May 2, 2017, Officer Harden left the RV park in his personal vehicle to respond to a call. Nutt and another neighbor, Alex Britton, were outside at the time. Although there is some dispute as to what exactly was said, Nutt yelled out to Harden that he was driving too fast. Harden backed up and argued with Nutt. Nutt told Harden to "slow

the fuck down" and asked him if he thought he was above the law. Harden asked Nutt to identify himself, and Nutt refused.[1] Harden explained that he was a Llano police officer on his way to a call and told Nutt to go back inside his RV. After Harden left, Nutt and Britton went back inside their own trailers.

About twenty-three minutes later, Harden returned to the RV park. He called the RV park manager, Christie Schutte, and told her that there was a guy "irate and upset" a "few trailers down from him." Harden also called for backup, saying he had a "public intox" interaction with Nutt. When Schutte arrived at the RV park, she asked Harden what was wrong, and Harden said he was taking Nutt to jail for public intoxication. Schutte asked, "Where is he at?" Harden responded, "He's in his trailer." Schutte replied, "Then what's the problem?" Harden also told dispatch that Nutt had gone back inside his trailer.

Officers Aimee Shannon and Jared Latta, as well as Appellant, responded to the call. The officers knocked on Nutt's door and, when Nutt opened the door, the officers demanded that he come out, but Nutt refused. Harden and Shannon repeatedly told Nutt to come outside, and he repeatedly refused to do so and denied the officers consent to enter his home. On the bodycam recording, Nutt expressly told police twice that he was not coming outside. Also, thirteen times he implied that he was not coming out:

- 00:11-00:13: "The best thing I can tell you is get off my door."
- 00:23-00:24: "I am not stepping out."
- 00:26-00:27: "You are not coming in."
- 00:28-00:34: "This is my personal owned property. I am not. And I am not."
- 00:56-00:56: "No sir." (In response to 'step outside')

---

[1] Harden denied speeding but said that Nutt was "highly intoxicated in a public place" and refused to provide his name. By refusing, Harden said Nutt committed the offense of "[f]ailing to ID."

- 01:24-01:25: "Get your hands off my door."
- 01:29-01:33: "Get your hands off my door. This is my property."
- 01:35-01:36: "Take your hands off."
- 01:40-01:42: "Take your hands off of my door."
- 01:49-01:51: "Take your hands off my door."
- 01:55-01:56: "Please take your."
- 04:11-04:13: "Why am I stepping out of my."
- 04:24-04:25: "For what." (In response to 'come down those steps')
- 09:31-09:34: "Are you coming in for what reason?"
- 10:48-10:50: "I don't wanna walk outside."

State's Exhibit 2.

Harden told Nutt that he saw Nutt "out here intoxicated" earlier and that Nutt committed that offense twice. He also said that Nutt "quickly scurried into [his] trailer and shut [his] door."[2] Harden threatened to call Nutt's supervisor, stated that he would come up the stairs to "get" Nutt if Nutt did not step outside, and said Nutt would be facing a charge of resisting arrest if Officer Harden had to fight him. Officer Shannon also told Nutt that by not complying, he was resisting arrest. She pointed her taser at Nutt—specifically, at his crotch—and she and Harden both said that Nutt would be tased if he did not exit the trailer. Officer Shannon's body camera reflected that, during the last 14 minutes of the confrontation, Nutt was standing inside the door of his trailer and was not wearing shoes.

It is difficult to know when Appellant arrived at the scene. Jack Schumacher, chief investigator for the district attorney's office for Llano, Burnet, San Saba, and Blanco counties, testified that he believed Appellant was at the scene for most of the 14 minutes of the bodycam video. In the bodycam video, it appears that Appellant and Sergeant Latta

---

[2] At trial, Nutt testified that he was not outside when Harden returned to the RV park and denied running back to his trailer and shouting profanities at Harden.

are present at approximately the 10:15 marker, which is deduced via the additional flashlight shone on the trailer. Harden is on the trailer's steps. At the 10:38 marker, Appellant walks up the steps and enters the trailer and positions himself behind Nutt. The offense report seems to imply that Appellant arrived with the other officers. Specifically, Harden's report states that "Officer Shannon, Sergeant Jared Latta and [Appellant] arrived on scene a short time later." Chief Investigator Schumacher testified that he believed Appellant was at the scene for most of the 14 minutes of the video. Although Appellant never told Schumacher when he arrived on the scene, Schumacher inferred this by interviewing Cory Nutt, Alex Britton, and Christie Schutte.  Britton, Cory Nutt's neighbor, testified "When he [Appellant] did get there he was kind of in the back kind of just watching everything." Britton also testified that Appellant showed up last, probably ten, 15 minutes after the rest of the officers, and that when Appellant showed up, he did not immediately go into Mr. Nutt's trailer. The RV park manager, Christie Schutte, testified that Appellant "pulled up right after Aimee [Officer Shannon]." And finally, Corey Nutt testified that he was aware of four officers on the scene before he was arrested.  He heard Harden talking at the back of his trailer, and Mr. Nutt made the assumption he was telling his side of the story.

As seen on the bodycam, Appellant proceeded to walk up the steps, walk inside Nutt's trailer, move behind Nutt, places a hand on Nutt's back, tells Nutt to step out of the trailer, and directs him out the door and down the steps. While this is occurring, Nutt states, "I don't wanna walk outside." Nutt is handcuffed, and Harden and Latta arrest him for public intoxication.

The public intoxication charge was ultimately dropped. Afterward, Nutt contacted Schumacher to report the circumstances around his arrest. Schumacher and Texas Ranger Marquis Cantu interviewed Appellant. Appellant stated that he viewed the situation as "obviously a drunk guy that was refusing to come out after he went back in the trailer" and that there would have been no problem if Nutt had not run back into his trailer. When asked his basis for going into Nutt's RV, Appellant stated, "I didn't want to see a 300-something pound guy get tased standing in that doorway, and falling face first."

At trial, Schumacher testified that there were no exigent circumstances present in this case to justify the warrantless arrest. He said that any potentially exigent circumstances dissipated when Harden told dispatch that Nutt was in his trailer and, therefore, that the police were not in a continuous pursuit of an individual. He said that, by entering the trailer, Appellant "effected an illegal arrest."

Schumacher also testified that as part of Appellant's "occupational oversight" responsibilities, he could have ordered Shannon to "holster" her taser. And he said that several witnesses told him that Appellant was present for most of the exchange recorded on Shannon's body cam even though he is only seen on the recording near the end.

Lisa Bujnoth, a retired police officer, testified that, based on her review of the bodycam video, Harden and Shannon were not entering Nutt's home because they understood that they did not have legal authority to do so.

A copy of the offense report prepared by Officer Harden was admitted into evidence. The report was signed by Officer Harden and contains Appellant's initials as Officer

Harden's supervisor. During Schumacher's interview with Appellant, Appellant admitted that he read Officer Harden's offense report regarding the incident. The report states:

1. On 2 May 2017 at approximately 10:50 pm, Llano PO Officers Shannon and Idol were answering a call for service at 1100 W Haynie St, Apt. 311 in reference to a physical domestic disturbance. The subject(s) had barricaded themselves [sic] inside the residence. When this information went out over the radio, I responded. As I was leaving the Riverway RV Park, located at 1907 W Ranch Road 152, I could hear a male subject yelling. I stopped my vehicle and asked the man if he was alright. The subject yelled at me "slow the fuck down". I immediately noticed the Subject to be speaking with slurred speech.

2. I presented my officer's badge and asked the man his name, which he refused to give. He then asked for my name. I told him that my name was Grant Harden, that I was an officer with the Llano Police Department and that I was on my way to an officer's call for emergency assistance. The man said something that was unintelligible. I also noticed that the male was staggering heavily as he walked. The male was clearly intoxicated. I told the man to go inside his RV, due to my need to leave the area. I then left.

3. After providing assistance to Officers Shannon and Idol, I returned to the RV park. I stopped behind the intoxicated male's RV in order to get his license plate number, in an attempt to identify him. I did not see the male and thought that he had probably retreated into his RV for the night. The license plate on the RV and the pickup truck parked next to it were both registered to a CORY DON NUTT (DOB: 12/1/1978). As soon as I had received this information, Nutt stepped out of the shadows and began speaking to me. I asked him his name, but he refused again. He then said to me "get out of the truck bitch".

4. Given Nutt's slurred speech, inability to walk without staggering and the fact that he had chosen to begin using profane language in a public place, I made the decision that Nutt may be a danger to himself or others. I decided that Nutt was to be arrested for Public Intoxication. I exited my vehicle and requested a patrol unit for assistance.

5. Officer Shannon, Sergeant Jared Latta and Chief Kevin Ratliff arrived on scene a short time later. Ratliff placed Nutt in handcuffs and I notified him that he was under arrest for Public Intoxication. I transported Nutt to the Llano County jail and booked him in without further incident.

The report did not mention any of the facts surrounding Nutt's arrest. During trial, Investigator Schumacher testified that prosecutors rely on offense reports, in part, to determine what charges might be warranted and also to determine if the police engaged in any unlawful behavior that might result in evidence being suppressed. Schumacher said that there were omissions in Harden's offense report and discrepancies between what was in the report and what was captured on the recording from Shannon's body cam. He explained that there was no mention of the interaction between Nutt and the officers while he was in his home or of Appellant entering Nutt's home and escorting him out without a warrant and without consent. Also, the report listed no witnesses even though "some civilians involved . . . witnessed the event," including Britton and Schutte. The failure to mention the witnesses was a "significant" omission. Further, Appellant signed the report as the supervisor and, therefore, approved the report. He said that he could not think of a reason why Appellant would not ensure that the report accurately chronicled the events if he genuinely believed that the arrest was legal.

Lisa Bujnoth also testified that "[t]he purpose of an offense report is to account in an incident for everything that happens from the beginning to the end . . . whether it's good or bad" because "the offense report is the first document that . . . the prosecuting attorney sees in order to determine what charges are appropriate, if any." She said that offense reports "should be very comprehensive" and "should include witnesses that may or may not have information, both for the prosecutor and for the defense." Bujnoth testified that there were disparities between what occurred on the recording and what was listed in the

offense report, including not listing any witnesses or mentioning that Shannon pointed her taser at Nutt, which Bujnoth said was a show of force that was required to be disclosed. Bujnoth said that the omissions and misrepresentations were so great that they qualified as tampering with a governmental record. She said that "if all the elements of the incident had been included in the report[,] it would have been obvious that the arrest was illegal." Further, by signing the offense report, Appellant indicated that he read the contents, endorsed the description of the events on the night in question, and used the report to document the event.

The jury found Appellant guilty of both counts of official oppression as well as the misdemeanor offense of tampering with a governmental record. In each case, the judge sentenced Appellant to six months in jail, probated for one year, all to run concurrently.

## Court of Appeals

On appeal, Appellant challenged the sufficiency of the evidence supporting his conviction for tampering with a governmental record and two convictions for official oppression.[3] *See Ratliff v. State*, 604 S.W.3d 65 (Tex. App.—Austin 2020). As for the tampering conviction, Appellant asserted that the evidence was insufficient because the State did not provide any evidence regarding "what is required to be [included] in an offense report." He also argued that there was no statute requiring that a police officer fill out an offense report or that certain information be included on the report. As for the official oppression convictions, Appellant argued that: (1) the evidence did not establish that he

---

[3] Appellant also argued that there was error in the jury charge. However, we did not grant review on that ground and, therefore, it will not be discussed in this opinion.

knew that the arrest and entry were unlawful; (2) the evidence established that his otherwise impermissible conduct was justified by the presence of exigent circumstances; and (3) the entry and arrest were authorized because he observed Nutt commit an offense.

The court of appeals affirmed all three convictions. *Id*. at 69. It held that a rational jury could have concluded beyond a reasonable doubt that Appellant (1) "made or used a governmental record knowing that the report was false" and (2) "while acting under color of his office as a public servant, . . . subjected Nutt to an arrest that he knew was unlawful and intentionally subjected Nutt to mistreatment knowing that his actions were unlawful by criminally trespassing in Nutt's home." *Id*. at 74, 85.

We granted review to determine whether the circumstances were sufficient to prove that Appellant tampered with a governmental record and committed official oppression.

*Standard of Review*

When reviewing the legal sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The appellate court must give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Circumstantial evidence and direct evidence are equally probative, and either one alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw reasonable inferences from the evidence

presented at trial "as long as each inference is supported by the evidence presented at trial." *Id.* at 15. The evidence is to be measured against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge, we explained, "is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

<u>Analysis</u>

## I. TAMPERING WITH A GOVERNMENTAL RECORD

Appellant was charged with tampering with a governmental record in violation of Texas Penal Code section 37.10(a)(5), which states that "A person commits an offense if he makes, presents, or uses a governmental record with knowledge of its falsity."[4] The indictment alleged that Appellant:

> did then and there, with intent to defraud or harm another, namely, Cory Nutt, make or present or use a governmental record, namely, a Llano Police offense report, in case number 17-130, by omitting or misrepresenting facts of the arrest of Cory Nutt, and the Defendant made or presented or used the governmental record with knowledge of its falsity.

The report was prepared by Officer Grant Harden, and the State's theory of the case was that when Harden made the report, he left out all the information about Appellant going

---

[4] Texas Penal Code section 37.10(a) enumerates six different offenses for tampering with a governmental record, ranging from a Class A misdemeanor to a second-degree felony. The degree of offense is determined by the type of record tampered with and whether or not the "actor's intent is to defraud or harm another." Tex. Penal Code. Ann. § 37.10(c).

into Nutt's trailer. Therefore, in the State's theory, the tampering occurred when Appellant initialed the report, indicating his approval.

The court instructed the jury on both felony and misdemeanor offenses of tampering with a governmental record. The jury charge specified that Appellant was guilty of misdemeanor tampering if he "ma[d]e or present[ed] or use[d] a governmental record, namely [Officer Harden's] Llano Police offense report, . . . by omitting or misrepresenting facts of the arrest of . . . Nutt . . . with knowledge of [the report's] falsity." The jury found Appellant guilty of misdemeanor tampering.

The court of appeals agreed. It held that a rational jury could have concluded that when Appellant initialed the offense report that omitted events "pertaining to the legality of Nutt's arrest that Appellant himself witnessed, he made or used a governmental record knowing that the report was false." *Ratliff*, 604 S.W.3d at 74. In particular, the court relied on the testimony of Officers Schumacher and Bujnoth. *Id*. They had testified similarly that the offense report failed to mention the interaction between Nutt and the officers while he was in his home and the fact that there was no mention of Appellant entering Nutt's home and escorting him out without a warrant and without consent. *Id*. They also testified that there were no witnesses listed in the report, which Schumacher described as a "significant" omission. *Id*. The court of appeals further relied on Officer Bujnoth's testimony that offense reports "should be very comprehensive" and "should include witnesses that may or may not have information, both for the prosecutor and for the defense." *Id*. at 73. Additionally, the court of appeals noted "discrepancies between what was in the report and what was captured on the recording from Officer Shannon's body camera." *Id*. at 74.

We now turn to the question of whether the court of appeals properly held that the evidence was sufficient to sustain Appellant's conviction for tampering with a government record. As discussed above, a sufficiency review rests on whether the evidence supports the elements of the charged crime as defined by the hypothetically correct jury charge. *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018). However, in some cases, sufficiency of the evidence also turns on the meaning of the statute under which the defendant has been prosecuted. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). That question is a question of law, which we review de novo. *Id*.

The State introduced the testimony of retired peace officer Lisa Bujnoth, who testified that offense reports "should be very comprehensive" and "should include witnesses that may or may not have information, both for the prosecutor and for the defense." Bujnoth testified that there were disparities between what occurred on the recording and what was listed in the offense report, including not listing any witnesses or mentioning that Shannon pointed her taser at Nutt, which Bujnoth said was a show of force that was required to be disclosed.

Likewise, Investigator Schumacher said that there were omissions in Harden's offense report and discrepancies between what was in the report and what was captured on the recording from Shannon's body cam. He explained that there was no mention of the interaction between Nutt and the officers while he was in his home or of Appellant entering Nutt's home and escorting him out without a warrant and without consent. Also, the report listed no witnesses even though "some civilians involved . . . witnessed the event," including Britton and Schutte.

However, there was no testimony that anything included in Harden's report was false.[5] The first four paragraphs of the offense report summarized the events that occurred prior to Appellant's arrival on the scene. When Appellant initialed the report, he would not have had personal knowledge of those events. In his interview with Schumacher, Appellant stated that he relied on Officer Harden's representations regarding those events ("That's what Grant told me"). None of the State's witnesses suggested that anything in these four paragraphs was false. Paragraph five was the only part of the report that involved events about which Appellant had personal knowledge and, like the preceding four paragraphs, there was no testimony or evidence presented indicating that this paragraph was false.

At most, the State's witness testimony supports the proposition that these witnesses disagree with Harden's offense reporting style. But this testimony does not address the root of the issue—Appellant's knowledge that the account of the offense in the report were false. In other words, the State failed, not only to show that anything in Harden's statement was false, but that Appellant was aware that it was false. It is difficult to conceive of someone being convicted of falsifying a governmental record when nothing in the record is, in fact, false. Therefore, the evidence is insufficient to prove Appellant used a governmental record knowing that the report was false.

However, the indictment in this case alleges that Appellant engaged in the conduct of "omitting or misrepresenting" the facts of Nutt's arrest. Appellant's sufficiency challenge

---

[5] There appears to be one discrepancy in the offense report. Although the report states that Appellant placed the handcuffs on Nutt, it was actually Officer Latta who did so. None of the parties have suggested that this was an intentional misrepresentation.

requires us to determine whether the conduct of omitting or misrepresenting specifics of Nutt's arrest in an offense report constitutes an offense under the tampering statute. We hold that it does not.

The Texas Penal Code provides that a person commits an offense only if he commits an *act* or an *omission*. Tex. Penal Code Ann. § 6.01(a). An "act" is defined as "a bodily movement, whether voluntary or involuntary, and includes speech." Tex. Penal Code Ann. § 1.07(a)(1). By contrast, an "omission" is defined as a "failure to act." Tex. Penal Code Ann. § 1.07(a)(34). A failure to act—an omission—is not an offense unless the defendant has a legal duty to act. Tex. Penal Code §§ 1.07(a)(30), 6.01(c); *Billingslea v. State,* 780 S.W.2d 271, 276 (Tex. Crim. App. 1989); *see also State v. Taylor*, 322 S.W.3d 702, 705 (Tex. Crim. App. 2010).

The court of appeals erred by failing to address section 6.01(c)'s duty to act requirement in its analysis. Appellant argues that there was no requirement that the offense report document anything other than the offense itself; that the report at issue did document the alleged offense of public intoxication; that the report did not need to document Nutt's actual arrest; and that the report related to Nutt's conduct and, therefore, did not need to specify the basis for the charges against Appellant. We agree.

As addressed above, a person who omits to perform an act does not commit an offense unless a law as defined by section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to act. Tex. Penal Code Ann. § 6.01(c). As applied to the facts of this case, Texas Penal Code section 37.10(a)(5), under which Appellant was convicted, does not make an omission an offense within the meaning of Texas Penal Code

section 6.01(c). Nor does the tampering statute prescribe a duty to act. Without a duty to act, any subsequent failure to act is not an offense. *See Billingslea*, 780 S.W.2d at 274; *see also Florio v. State*, 784 S.W.2d 415, 416-17 (Tex. Crim. App. 1990).

There is no statute that prescribes any particular content in an offense report for a public intoxication offense. In fact, there are only a few circumstances that dictate the contents of an offense report. Articles 2.30(b) and 5.05(a) of the Texas Code of Criminal Procedure require a peace officer who responds to call about domestic violence or certain assaultive or terroristic offenses to prepare a written report with specific contents. Otherwise, in the preparation of any other offense report, there is no statute or code requiring anything more than the facts demonstrating that the arresting officer had probable cause to believe an offense had occurred. And while the State presented the opinion testimony of Schumacher and Bujnoth as to what information is advisable to include in an offense report, best practices do not create a duty to act.

The offense report generated by Officer Harden reported the facts of Nutt's commission of the offense of public intoxication. As his supervisor, Appellant had no statutory duty to ensure that particularized information was included in Officer Harden's report. Further, there is no evidence that any facts relating to the offense were false or intentionally omitted from the report with the intent to deceive. There was no evidence that Appellant attempted to create a false impression or encouraged Harden to omit facts from his report with the intent to distort anyone's perception. Quite the contrary, the record shows that Appellant did not try to conceal anything that transpired on the evening of Nutt's arrest, but instead

personally prepared and provided copies of the Llano Police Department's video footage of Nutt's arrest to the prosecutor.

Because the tampering statute does not create an offense through an omission or create a duty to include certain information in an offense report, the evidence is insufficient to support a conviction. Consequently, we reverse the judgment of the court of appeals and render an acquittal for the count of tampering with a governmental record.

## II.     OFFICIAL OPPRESSION

Under the Penal Code, "[a] public servant acting under color of his office or employment commits" the offense of official oppression "if he . . . intentionally subjects another to mistreatment or arrest . . . that he knows is unlawful" or "intentionally denies or impedes another in the exercise or enjoyment of any right . . . knowing his conduct is unlawful." Tex. Penal Code § 39.03(a).

In this case, the jury received the following instructions:

> A police officer making an arrest without a warrant may not enter a residence to make the arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the police officer making the arrest enter the residence without consent of a resident or without a warrant.

This instruction is consistent with article 14.05 of the Texas Code of Criminal Procedure. Appellant does not dispute that he lacked Nutt's consent to enter his home. Therefore, to prove that the entry into Nutt's home was unlawful, the State must prove the lack of exigent circumstances.

<u>Exigent Circumstances</u>

This Court has defined these exigent circumstances as "(1) providing aid to persons whom law enforcement reasonably believes are in need of it; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; or (3) preventing the destruction of evidence or contraband." *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013) (citing *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)).

Applying *Turrubiate*, no exigent circumstances supported a warrantless entry into Nutt's residence. First, Appellant was not there to provide Nutt aid; he was there to arrest him.[6] Second, Appellant had no reason to believe that Cory Nutt was armed and dangerous.[7] To the contrary, the record shows that Nutt was standing inside his trailer, shoeless, and there were no indications to suggest he was a threat. In fact, Nutt testified that he was sleeping when the confrontation began. Lastly, there was no need to preserve evidence, such as collecting Nutt's blood for analysis. While a defendant's blood alcohol content might be relevant in an investigation of driving while intoxicated, it is not necessarily so in a case of public intoxication. Even so, it is not clear that the need to preserve evidence of Nutt's blood-alcohol level would justify a warrantless home arrest. *See Welsh v. Wisconsin*, 466 U.S. 740, 754 (1984).

---

[6] The record reflected that Officer Harden requested backup for a "public intox."

[7] In Appellant's interview with the chief investigator with the District Attorney's Office, Appellant stated that the reason for arresting Nutt was for the offense of public intoxication—not for threatening Officer Harden.

However, in addition to the three warrant exceptions noted above, the jury instructions included a fourth: hot pursuit.[8] The Supreme Court has held that police officers may enter premises without a warrant when they are in hot pursuit of—chasing— a fleeing suspect. *United States v. Santana*, 427 U.S. 38, 42–42 (1976). Appellant alleges that Officer Harden's hot pursuit of Nutt justified his warrantless entry into the residence. For reasons discussed below, the hot pursuit exception to the warrant requirement does not apply in this case.

Here, the jury instructions provided that exigent circumstances would justify a warrantless intrusion by police officers into a residence where the officer was in immediate and continuous pursuit of a person for a <u>felony</u> offense (emphasis added). This language is adapted from *Welsh v. Wisconsin*, in which the Supreme Court found that there were no exigent circumstances to justify a warrantless entry into the residence of a driver whom the police had probable cause to believe had been driving while intoxicated. 466 U.S. at 753–54. Welsh was driving, swerved off the road, and came to a stop in a field. *Id*. at 742. He then fled on foot to his residence. *Id*. at 742–43. Shortly thereafter, police went to Welsh's residence and entered without an arrest warrant. *Id*. at 743. The court reasoned that there was no "hot pursuit" because "there was no immediate or continuous pursuit from the scene

---

[8]The Instructions of the Court were as follows:
> Exigent circumstances that would justify a warrantless intrusion by police officers into a residence are: 1. providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; or 2. protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; or 3. preventing the destruction of evidence or contraband; or 4. where the officer is in immediate and continuous pursuit of a person for a felony offense.

of a crime." *Id.* at 753. Furthermore, there was little remaining threat to public safety once the suspect arrived at home without his car. *Id*. The Court noted that the gravity of the offense for which the arrest is being made is an important consideration in determining exigency. *Id*. ("[I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.").

Like the officers in *Welsh*, Appellant was not involved in a "hot pursuit" of Nutt as there was no continuity in pursuit. This is true whether the jury believed Nutt's version of events (that Nutt was asleep when the officers banged on his trailer door and began the standoff), or Harden's version of events (that Nutt "stepped out of the shadows" after Harden returned from his earlier, unrelated service call). After the alleged offense occurred, Officer Harden stopped pursuit by telling Nutt to go back into his residence and driving away from the scene. If there had been an immediate or continuous pursuit, Officer Harden would have entered the residence immediately when Nutt returned to his trailer.

Even assuming *arguendo* that there was a hot pursuit, Appellant knew the arrest was going to be for public intoxication, a Class C misdemeanor, not a felony. As stated above, the jury instructions stated that an exigent circumstance to justify a warrantless entry into a residence could exist when the officer was in immediate and continuous pursuit of a person for a <u>felony</u> offense. Because the alleged offense was a misdemeanor, and there was no hot pursuit, no exigent circumstances justified the warrantless entry.

**CONCLUSION**

In conclusion, the evidence presented at trial including the bodycam video; testimony from Nutt, Schutte (RV Park manager), and Britton (Nutt's neighbor); and evidence of Appellant's experience in law enforcement and his position as chief, combined with the testimony from two very experienced officers (Officers Schumacher and Bujnoth) that there were no exigent circumstances for Appellant to enter Nutt's trailer, allowed a rational juror to conclude that the arrest and trespass were unlawful and that Appellant knew the arrest and trespass were unlawful. Therefore, the evidence was sufficient to support the jury's determination that none of the warrant exceptions applied in this case and that Appellant knew his actions were illegal. We affirm Appellant's official oppression convictions. However, because the evidence was legally insufficient to support the tampering with a governmental record conviction, we reverse the judgment of the court of appeals and render an acquittal for the single count of tampering with a government record.

Filed: March 16, 2022

PUBLISH