

# In the Court of Criminal Appeals of Texas

No. PD-0760-24

RAY LEE COCKRELL, *Appellant*

v.

THE STATE OF TEXAS

On State's Petition for Discretionary Review
From the Sixth Court of Appeals
Bowie County

YEARY, J., delivered the opinion of the Court in which SCHENCK, P.J., and KEEL, MCCLURE, and PARKER, JJ., joined. MCCLURE, J., filed a concurring opinion in which KEEL, J., joined. RICHARDSON, J., concurred in the result. FINLEY, J., filed a dissenting opinion in which NEWELL and WALKER, JJ., joined.

Appellant was convicted of injury to a child by omission after his dogs attacked a young child. TEX. PENAL CODE § 22.04. But the court of appeals reversed that conviction—holding that the State failed to show

that Appellant had a statutory duty to protect the child. The issue before this Court, now, is whether Section 822.042(a) of the Texas Health and Safety Code can serve as the source of a "statutory duty to act" for purposes of satisfying the elements of injury to a child by omission. TEX. PENAL CODE § 22.04; TEX. HEALTH & SAFETY CODE § 822.042(a). We conclude that Section 822.042(a) of the Texas Health and Safety Code can serve as the statutory duty for purposes of injury to a child by omission. We therefore reverse the judgment of the court of appeals.

## I. BACKGROUND

### A. Factual Background

Appellant lived outside the city limits of Texarkana on some property he owned. He also owned numerous pit bulls that he kept on that same property. Curiously, while he lived in a make-shift tent on the property, his dogs resided inside a trailer that he also kept there.

The property was enclosed by a fence. But the fence was insufficient to contain the dogs. So, on several occasions in 2021 and 2022, the dogs escaped the property—attacking both people and animals alike.

After one instance, when the dogs attacked a neighbor's horse, a deputy from the Bowie County Sheriff's Office (BSCO) issued Appellant a written "DOGS DANGEROUS TO ANIMALS DOG OWNER'S NOTIFICATION." The notice referenced Chapter 822 of the Texas Health and Safety Code. During this interaction, Appellant acknowledged that his dogs were dangerous.[1] This occurred on July 13,

---

[1] At trial, the deputy testified that Appellant made this acknowledgement. The notification also served to put Appellant on notice that he had dangerous dogs.

2021.

Even after that incident, Appellant's dogs continued their attacks. Just one month later, in August of 2021, the dogs attacked a woman who had been driving a scooter past Appellant's property. That same day, they again attacked the neighbor's horse. Then, in May of 2022, they attacked a girl as she walked past Appellant's home—biting her and stripping her of her clothing.

A few weeks later, Appellant's dogs entered a different neighbor's yard and killed that neighbor's dog. In August of 2022, the dogs again entered that same neighbor's yard. This time, the neighbor contacted BCSO. When officers arrived, the dogs charged at the officers—forcing the officers to shoot at the dogs, which caused the dogs to retreat back to Appellant's property.

On September 5, 2022, the dogs attacked N.S., and that event served as the factual basis for the indictment in this case. N.S., who was just ten years old at the time of trial, had gone for a swim with his cousins and older sister at a nearby pond. While N.S. was walking home to his grandparents' house, Appellant's dogs surrounded and attacked him. His sister attempted to fend off the dogs by beating them with a stick. Meanwhile, one of the cousins called his father for help.

The father arrived in his truck and helped N.S.'s sister to fend off the dogs before driving all of the children home. Ultimately, an ambulance arrived and transported N.S. to the hospital, where N.S. underwent surgery to repair injuries caused by Appellant's dogs. According to the surgeon, N.S. suffered "serious" injuries from multiple dog bites.

**B. The Trial**

Appellant was indicted for committing an offense defined by Section 22.04(a) of the Penal Code.[2] The indictment alleged that Appellant "intentionally or knowingly by omission, cause[d] serious bodily injury to [N.S.]" when he had a duty to act pursuant to Texas Health and Safety Code Section 822.042(a) and/or Section 822.042(b). The indictment also specified that Appellant failed to restrain or enclose his dangerous dogs. Following a jury trial, Appellant was found guilty of injury to a child by omission, a first-degree felony, and sentenced to confinement for thirty-five years. *See* TEX. PENAL CODE § 12.32(a) ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years.").

**C. The Appeal**

Appellant argued on appeal "that the State neither alleged nor proved the statutory elements of the offense."[3] *Cockrell v. State*, No. 06-23-00230-CR, 2024 WL 3709879, at *1 (Tex. App.—Texarkana Aug. 8, 2024) (mem. op., not designated for publication). The court of appeals

---

[2] Section 22.04(a) provides: "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." TEX. PENAL CODE § 22.04(a).

[3] In a companion case, Appellant challenged his separate conviction for the offense of attack by dog causing serious bodily injury. TEX. HEALTH & SAFETY CODE § 833.005(b). He argued there was jury charge error, and the court of appeals reversed the trial court's judgment. *Cockrell v. State*, No. 06-23-00229-CR, 2024 WL 3708996 (Tex. App.—Texarkana Aug. 8, 2024) (mem. op., not designated for publication).

agreed. *Id.* It explained that an omission, under Section 22.04(a) of the Penal Code, is an offense only if "(1) the actor has a legal or *statutory duty* to act; or (2) the actor has assumed care, custody, or control of a child." *Id.* at *2 (emphasis added) (quoting TEX. PENAL CODE § 22.04(b)). It highlighted the State's concession that every court opinion addressing an injury to a child case so far has looked to the Texas Family Code to supply the "statutory duty[,]" and it suggested that importing a duty from a statute outside of the Family Code would allow such things as traffic violations to impose first-degree felony liability for injury to a child. *Id.* at *3.

The court of appeals also determined that the State's interpretation—that any outside statute could supply a duty—was unsupported by any court precedent. *Id.* Because Section 822.042 itself does not expressly (1) provide that omissions under that section are an offense or (2) contain a statutory duty specifically directed to the child, the court of appeals determined that Appellant had no statutory duty to act to protect N.S. *Id.* Accordingly, it decided that the State did not allege or prove the necessary elements to support the conviction. *Id.* It reversed the trial court's judgment and rendered a judgment of acquittal. *Id.*

In dissent, Justice Rambin argued that the plain language of Section 22.04(b)(1) does not limit what duties may be imported. *Id.* at *4 (Rambin, J., dissenting). He argued that, in the context of injury to a child by reckless act, liability has previously been upheld by a court of appeals even when an actor does not know the child. *Id.* at *5–6 (citing *Durkovitz v. State*, 771 S.W.2d 12, 13–14 (Tex. App.—San Antonio 1989,

no pet.)). He explained that he would modify the conviction to reckless injury to a child by omission, a second-degree felony—which carries a maximum sentence of twenty years—and remand the case to the trial court to re-assess punishment. *Id.* at \*7.

The State sought discretionary review, but we granted review on our own motion to address the following question: "Can the duty of an owner of dangerous dogs to restrain or securely enclose them, TEX. HEALTH & SAFETY CODE § 822.042(a), be imported to serve as a statutory duty for purposes of injury to a child by omission?"[4]

## II. RELEVANT STATUTORY PROVISIONS

### A. The Penal Offense at Issue

As relevant in this case, Section 22.04(a) of our Penal Code establishes that a person "commits an offense if he . . . intentionally [or] knowingly . . . *by omission*, causes to a child . . . serious bodily injury[.]" TEX. PENAL CODE § 22.04(a)(1) (emphasis added). An "omission" is elsewhere defined as a "failure to act." TEX. PENAL CODE § 1.07(a)(34). Section 6.01(c) of the Penal Code further provides that "[a] person who omits to perform an act does not commit an offense unless *a law* as defined by Section 1.07 provides that the omission is an offense or otherwise *provides that he has a duty to perform the act*." TEX. PENAL CODE § 6.01(c) (emphasis added). And Section 1.07 defines "law" in pertinent part as "a statute of this state[.]" TEX. PENAL CODE §

---

[4] We also granted a second ground for review that, in essence, asked: If the importation of the dangerous-dog duty in Section 822.042(a) is improper for injury to a child by omission, should the case be remanded for the lower court to address the Appellant's act of letting his dogs roam freely as a basis for liability. Because we hold that the importation of the statutory duty from in Section 822.042(a) is permissible, we do not reach that issue.

1.07(a)(30).

The statute at issue in this case—under which Appellant was prosecuted—explains in relevant part that an intentional or knowing "omission that causes [serious bodily injury] is conduct constituting an offense . . . if: (1) the actor has a legal or *statutory duty* to act[.]" TEX. PENAL CODE § 22.04(b) (emphasis added). As a result, the State was required to prove in this case, among other things, that Appellant had a legal or statutory duty to act. TEX. PENAL CODE § 22.04(b)(1). We have also described the offense at issue here as "a result-oriented offense." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). This means that proving a violation of the statute requires evidence that the accused possessed a mental state that relates to "*the result* of that conduct[,]" rather than simply to the conduct itself (or in this case, the lack of conduct). *Id.* (emphasis added). In this context, the State's burden was to show that Appellant had a statutory duty to act, he failed to act, and in failing to act, he either: (1) intended serious bodily injury to be caused, or (2) knew serious bodily injury would be caused, but he still failed to act. *See* TEX. PENAL CODE § 22.04.

## B. The Statutory Duty at Issue

Our Texas Health and Safety Code provides that, once an individual learns that he owns a dangerous dog, certain duties are imposed upon him. Section 822.042(a) specifically provides that:

> Not later than the 30th day after a person learns that the person is the owner of a dangerous dog, the person shall: (1) register the dangerous dog with the animal control authority for the area in which the dog is kept; (2) restrain the dangerous dog at all times on a leash in the

immediate control of a person or in a secure enclosure; (3) obtain liability insurance coverage or show financial responsibility in an amount of at least $100,000 to cover damages resulting from an attack by the dangerous dog causing bodily injury to a person and provide proof of the required liability insurance coverage or financial responsibility to the animal control authority for the area in which the dog is kept; and (4) comply with an applicable municipal or county regulation, requirement, or restriction on dangerous dogs.

TEX. HEALTH & SAFETY CODE § 822.042(a). Essentially, Subsection (a) requires a person who learns that he owns a dangerous dog to (1) register the dog; (2) restrain the dog on a leash or in a secure enclosure; (3) obtain liability insurance or show financial responsibility; and (4) comply with any local regulation, requirement, or restriction on dangerous dogs. *Id.* And Subsection (b) requires "[t]he owner of a dangerous dog *who does not comply with Subsection (a)* [to] deliver the dog to the animal control authority not later than the 30th day after the owner learns that the dog is a dangerous dog." TEX. HEALTH & SAFETY CODE § 822.042(b) (emphasis added). But section 822.042 does not itself provide that an omission to perform one of these requirements is an offense. So, the question in this case has become whether Section 822.042 nevertheless supplies "a [legal or statutory] duty to perform the act." *Compare* TEX. PENAL CODE § 6.01(c) ("duty to perform the act"), *with* TEX. PENAL CODE § 22.04(b)(1) ("legal or statutory duty to act").

### III. STATUTORY CONSTRUCTION

This case requires us to construe—determine the meaning of—several different statutes. Statutory construction involves deciding pure questions of law. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App.

2009). And so, we engage in statutory construction *de novo*—on a non-deferential basis. *Id.*

When construing statutes, we begin with the language of the statute itself. *State v. Hardy*, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997). Generally, when "the plain language is clear and unambiguous, our analysis ends[.]" *Long v. State*, 535 S.W.3d 511, 520–21 (Tex. Crim. App. 2017). The Court has said that we will only depart from such a plain reading of the text when the plain language "leads to absurd results[.]" *State v. Cuarenta*, 707 S.W.3d 424, 427–28 (Tex. Crim. App. 2025). And absurd results, we have said, are those results "that the Legislature could not *possibly* have intended[.]" *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). But this exception has been described as a "narrow" one because we assume the Legislature does not act in absurd ways. *Id.*

Mere disagreement with a policy decision does not equate to an absurd result. *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005) (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004)) ("It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result."). Indeed, we may not "construe [a] statute in a manner that substitutes what we believe is right or fair for what the [L]egislature has written." *Ex parte Kibler*, 664 S.W.3d 220, 233 (Tex. Crim. App. 2022). Simply put, we do not disturb policy decisions of the Legislature. *Id.*

### IV. ANALYSIS

### A. A Statutory Duty

The Texas Code Construction Act provides that the word *shall*

"imposes a duty."[5] TEX. GOV'T CODE § 311.016(2). It explains that, "unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute[,]" *shall* should be construed to impose a duty. TEX. GOV'T CODE § 311.016. Indeed, this Court has also said that the word *shall* generally indicates a *mandatory* duty. *In re Guerrero*, 710 S.W.3d 798, 804(Tex. Crim. App. 2025) (citing *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002)).

As relevant here, Section 822.042(a) explicitly utilizes the word *shall* immediately preceding the list of requirements imposed on a person who learns they are the owner of a dangerous dog; no statute dictates a different construction; and the context in which the word appears does not require a different construction. Indeed, the title of Section 822.042 also reads: "*Requirements* for Owners of Dangerous Dogs." TEX. HEALTH & SAFETY CODE § 822.042 (emphasis added). And a *requirement* is defined by Black's Law Dictionary as "[s]omething that must be done because of a law or rule; something legally imposed, called for, or demanded; an imperative command." *Requirement*, BLACK'S LAW DICTIONARY (12th ed. 2024). It follows, then, that section 822.042 imposes a requirement, which is just another way of describing a duty to act. Moreover, nothing within the text requires that Section 822.042 *not* be read to impose a mandatory duty.

Appellant argues, contrary to what seems to be the general rule (*i.e.*, that the word *shall* imposes a mandatory duty), that Subsection (a)

---

[5] The Code Construction Act applies to the Health and Safety Code. *See* TEX. GOV'T CODE § 311.002.

of Section 822.042 (requiring an owner to, among other things, restrain a known dangerous dog by leash or enclosure) merely provides a conditional or alternative duty. To support his argument, he suggests that Subsection (b) of Section 822.042 permits the owner of a dangerous dog to simply deliver the dog to animal control rather than to comply with Subsection (a). In essence, Appellant argues that one could choose under the law either to comply with Subsection (a) or Subsection (b), but one need not comply with both. This, he contends, strips Subsection (a) of any true, mandatory duty to restrain.

But, contrary to Applicant's suggestion, Subsections (a) and (b) do not impose *alternative* duties. TEX. HEALTH & SAFETY CODE § 822.042. Subsection (a) utilizes mandatory language, indicating a mandatory— not an alternative—duty. *Id*. Subsection (b)'s requirement to deliver the dog to animal control does not in any way negate Subsection (a)'s requirement to, among other things, restrain one's dog. *Id*. Instead, it imposes an additional, mandatory requirement for an owner who "does not comply" with the duty imposed in Subsection (a). *Id*. ("The owner of a dangerous dog who does not comply with Subsection (a) shall . . . ."). In other words, Subsection (b) is the section that functions as a kind of conditional duty that is triggered by the failure to comply with the mandatory requirements set forth in Subsection (a).[6] *Id*.

To clarify, Subsection (a) still imposes a mandatory duty.

---

[6] A conditional duty is "[a] duty that is conditioned on the occurrence of an event other than the lapse of time." *Conditional Duty*, BLACK'S LAW DICTIONARY (12th ed. 2024). Comply means "to do what is *required*[.]" *Comply*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

Compliance with Subsection (a) is not optional. Subsection (b) merely provides a fail-safe in the event that an owner of a dangerous dog fails to comply with Subsection (a).

Appellant argues that the State alleged in the indictment that he failed to restrain or enclose the dogs, but he contends the State did not allege that he failed to turn them over to animal control. In this argument, he points again to what he suggests is the conditional nature of Subsection (a)'s requirements. He contends that because of the conditional nature of Subsection (a), the State was required to allege in its indictment, and the Court was required to include in its jury charge, both of the requirements found in Subsections (a) and (b).[7] But this is really an argument that concerns the *adequacy* of the *pleadings* and *propriety* of the *charge*—not whether Section 822.042(a) imposes mandatory duties.[8]

---

[7] It *might* be true that, upon compliance with the requirements of Subsection (b), a hypothetical person may be relieved of the mandatory duties imposed by Subsection (a). But there is no sense in which Subsection (b) operates like an exception to the applicability of the requirements imposed by Subsection (a), so that, if not pleaded and proved, the evidence would be insufficient to sustain the judgment for that reason. *Cf.* TEX. PENAL CODE § 2.02(a) ("An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . .'"). In any event, that question is not before us, and we do not finally decide the answer to that question today.

[8] Even assuming for the sake of argument that we agreed that Subsection (b)'s requirement had to be included in the pleadings and charge, with respect to the sufficiency claim that Appellant made in the lower court, a jury could certainly have found in this case that he failed to deliver his dogs within thirty days after learning that he owned a dangerous dog. The dogs attacked a person in August of 2021, and May of 2022, before finally attacking N.S. in September of 2022. So, even though Appellant's jury was not tasked with deciding whether he failed to deliver his dogs to the animal control authority within the required timeframe, a rational jury could have decided

We conclude that Section 822.042(a) plainly imposes a mandatory duty to act.

## B. Importing the Duty

Having confirmed that Section 822.042(a) imposes a mandatory duty to act, we must now decide whether that duty can be imported to the Penal Code to satisfy the statutory duty element contained in Section 22.04(b)(1). Section 6.01 of the Penal Code contemplates, at least with respect to omissions, that outside duties may be imported into Penal Code offenses. It plainly states that an omission constitutes an offense if *a law* provides a duty to perform an act. TEX. PENAL CODE § 6.01(c). According to the Penal Code, *law* includes a "statute of this state[.]" TEX. PENAL CODE § 1.07(a)(30). Because the Penal Code broadly defines *law* to include statutes of this state, it follows that Section 822.042(a)—a statute of this state—can supply a duty to act sufficient to satisfy the statutory duty element in Penal Code Section 22.04(b)(1). *Cf. Chase v. State*, 448 S.W.3d 6, 14–15 (Tex. Crim. App. 2014) (allowing the importation of an extra-Penal-Code defense to a Penal Code offense).[9]

_____

that the evidence was sufficient to show that he failed to comply with Subsection (b). *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). As for any potential inadequacy of the pleadings, that issue is not presently before this Court on discretionary review.

[9] The State suggests that the "Effect of Code" provision in the Penal Code, which states that "provisions of Titles 1, 2, and 3 [of the Penal Code] apply to offenses defined by other laws, unless the statute defining the offense provides otherwise[,]" might provide a basis for importing the duty. TEX. PENAL CODE § 1.03(b) (footnote omitted). But, as the Court has said before, "[t]he point of § 1.03(b) was to specify when a Penal Code provision would apply

After all, the plain language of the statute at issue here does not impose a limitation. It simply requires that "the actor has a legal or statutory duty to act[.]" TEX. PENAL CODE 22.04(b)(1). And, in other contexts, this Court has previously suggested that it could look outside a penal statute to find a duty to act. *State v. Guevara*, 137 S.W.3d 55, 56–57 (Tex. Crim. App. 2004) (citing *Billingslea v. State*, 780 S.W.2d 271, 273–75 (Tex. Crim. App. 1989)) ("This duty to act could be contained within the same statute that proscribes the offense . . . . Or the duty to act could be found in a different statute[.]"). As discussed above, the relevant provisions of Texas' dangerous dog law impose a statutory duty to act, and 22.04(b)(1) does not plainly limit what statutory duties from outside the Penal Code can form the basis for liability under the statute. Accordingly, we conclude that the provisions of 822.042(a) can serve as the statutory duty to act for purposes of Section 22.04(b).[10]

---

to an offense not contained in the Penal Code, not to specify how other laws outside the Penal Code, such as those creating defenses, would apply to Penal Code offenses." *Chase*, 448 S.W.3d at 14 (footnotes omitted).

[10] Appellant argues that this interpretation renders Section 22.04 unconstitutionally vague—both facially and as applied. Specifically, he alleges that the Penal Code's definition of *law*, which now includes common law, is too expansive. But, as Appellant conceded at oral argument, this claim was raised neither at trial nor on appeal. Consequently, it is not properly preserved. *See Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (rejecting an unconstitutional-as-applied challenge when the appellant did not object at trial that the statute was vague as applied to his conduct). Nevertheless, as Appellant acknowledges, he was indicted pursuant to a statutory duty, not a common law duty, so the concern that undergirds Appellant's vagueness challenge is not applicable on the facts of his case. *See United States v. Mazurie*, 419 U.S. 544, 550 (1975) (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 36 (1963)) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").

### C. No Absurdity

The court of appeals expressed concern that a plain interpretation of this statute might allow for the importation of duties embedded in, for example, the Texas Transportation Code, and it suggested that such an interpretation is unsupported by "caselaw." *Cockrell*, 2024 WL 3709879, at *3. Thus, without explicitly saying so, the court of appeals implicitly hinted that an interpretation not previously adopted in a court opinion is absurd. But the absurdity doctrine, itself, only applies if the Legislature could not possibly have intended the result. *Cuarenta*, 707 S.W.3d at 427–28 ("If the language of the statute is plain, we follow that language unless it leads to absurd results that the Legislature could not have possibly intended."). And we are not persuaded that the Legislature "could not possibly have intended" that individuals who cause serious bodily injury, even by omission, to vulnerable groups of people—like children—are subject to greater criminal liability. *See Schlittler v. State*, 488 S.W.3d 306, 313 (Tex. Crim. App. 2016) (citing *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 27 (1981)) (noting "a compelling governmental interest in the protection of children"). That decision is within the purview of the Legislature, and we are bound not to encroach upon its policy decisions.[11]

---

[11] Both in the court of appeals and at oral argument, there was concern regarding the propriety of subjecting individuals to a potential term of ninety-nine years' imprisonment for violating what might be considered a broad statute. *See* TEX. PENAL CODE § 12.32(a) (setting the maximum punishment for a first-degree felony at ninety-nine years). In particular, a concern was expressed about whether the construction of Section 22.04 called for by the State today might potentially subject individuals to heightened criminal

### D. Duty Need Not Be Owed to a Particular Person

Additionally, the court of appeals concluded, and Appellant now echoes, that the imported statutory duty must be *to the child*. But again, that is not how the statute reads.[12] Very easily, the Legislature could have written that "the actor has a legal or statutory duty to act [*to/for the child*.]" Indeed, it explicitly references "a child" in Penal Code Section 22.04(b)(2)—showing that it knows how to add clarifying language regarding a particular child. TEX. PENAL CODE § 22.04(b)(2); *see Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 329 (Tex. 2017) (citing *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011)) ("When the Legislature uses a word or phrase in one part of a statute but excludes it from another, the term should not be implied where it has been excluded."). So, its decision not to utilize that language

---

liability for commonplace conduct. But the Legislature itself addressed these concerns.

A limiting principle is inherently embedded within Section 22.04's *mens rea* requirement. Critically, the offense at issue here is a "result-oriented offense[,]" which requires "a mental state that relates not to the specific conduct but to the result of that conduct." *Williams*, 235 S.W.3d at 750 (citing *Alvarado*, 704 S.W.2d at 39). So, a mere omission, even when one has a duty to act, does not automatically subject an individual to liability. Instead, "[t]he State must prove that a defendant caused a child's serious bodily injury with the requisite criminal intent." *Id.* (citing *Cook v. State*, 884 S.W.2d 485, 490–92 (Tex. Crim. App.1994)).

[12] The dissent conducts an overview of the legislative history surrounding the injury to a child act, but at no point does it argue that the language of the statute is not plain. And this failure is fatal because, as this Court has said, "the plain language of a statute, not the legislative history behind it, dictates our interpretation of that statute." *State v. Johnson*, 939 S.W.2d 586, 587 (Tex. Crim. App. 1996).

in Section 22.04(b)(1) of the same law should be construed as purposeful. For us to unilaterally add it amounts to an act of judicial amendment of the statute to suit our own policy concerns. We cannot do that. Instead, "if [the Legislature] enacted into law something different from what it intended, it should amend the statute to conform [it] to its [true] intent."[13] *Cuarenta*, 707 S.W.3d at 428 (citing *Getts*, 155 S.W.3d at 158).

Also, the cases the court of appeals relied on to suggest that the duty must be *to the child* are distinguishable.[14] For instance, the court of appeals discussed *Billingslea v. State* for the proposition that the statutory duty must be *to a particular individual*. *Cockrell*, 2024 WL 3709879, at *1 (citing *Billingslea*, 780 S.W.2d at 276). But *Billingslea* analyzed a pre-amendment version of Section 22.04 that is strikingly different from the version that exists today. *Billingslea*, 780 S.W.2d at 271–72. There, the Appellant was charged with injury to an elderly person by omission under Section 22.04, but the State did not allege a statutory duty to act. *Id.* at 271. At one point, the Court suggested that

---

[13] The dissent suggests that this reading might "spark the Legislature to correct us[.]" Dissenting Opinion at 15. But because we are simply applying the plain language that the Legislature enacted, the Legislature would be correcting itself. *See Cuarenta*, 707 S.W.3d at 428 (citing *Getts*, 155 S.W.3d at 158). Our job, particularly when the language of a statute is plain, is to enforce the words of the statute, not estimate what the Legislature might have intended through those words. *Getts*, 155 S.W.3d at 158.

[14] For example, the court of appeals cited *Hawkins v. State*. *Cockrell*, 2024 WL 3709879, at *3 (citing *Hawkins v. State*, 891 S.W.2d 257, 258 (Tex. Crim. App. 1994). But *Hawkins* involved the construction of Section 22.04(b)(2)—which addresses "care, custody, or control of a child," not statutory duties. *Hawkins* 891 S.W.2d at 258. Accordingly, any passing suggestion that Section 22.04(b)(1) required an outside duty *to the child* was nothing more than dicta.

there must be a statutory duty "to care for an elderly person." *Id.* at 276. However, even assuming that were true, it is not controlling given that the Court decided the case pursuant to the pre-amendment version of the statute. *Id.* at 271–72.

At the time that *Billingslea* was decided, Section 22.04 did not address what sort of omission would count as conduct constituting an offense, as it does today. *Id.* at 271–72. So, the Court was not addressing statutory language—like that present in the statute applicable here—that explicitly provides that an omission is an offense if "the actor has a legal or statutory duty to act[.]"[15] TEX. PENAL CODE § 22.04(b)(1). As a result, an application of *Billingslea*'s supposed requirement that the duty must go *to a particular individual* is questionable at best—it stems from the pre-amendment version of the statute.

Furthermore, in *Guevara*, this Court suggested that *Billingslea* does *not* require that the duty be owed to any particular individual. *See State v. Guevara*, 137 S.W.3d at 56–57. The Court explained there that "[w]e concluded that we would have to look outside the 'injury to a child or elderly individual' statute to find a duty to act." *Id.* at 57 (citing *Billingslea*, 780 S.W.2d at 274). Indeed, the State failed to establish the omission offense in *Billingslea* precisely "because it could not show that the defendant had a duty to act." *Id.* (citing *Billingslea*, 780 S.W.2d at 276). So, contrary to the court of appeals decision, *Guevara* did not read

---

[15] The court of appeals' reliance on *Florio v. State*, *Cockrell*, 2024 WL 3709879, at *3 (citing *Florio v. State*, 784 S.W.2d 415, 417 (Tex. Crim. App. 1990)), shares the same flaw. *See Florio* 784 S.W.2d at 417 (analyzing the previous version of Section 22.04).

*Billingslea* to require a duty *to a particular person or child*—it simply read it to require a duty to act, period.

As recently as 2022, this Court described *Billingslea* in precisely that way. *See Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (quoting *Billingslea*, 780 S.W.2d at 274) ("[A]n omission is punished only when there is 'a corresponding duty to act.'"). Properly read, *Billingslea* simply highlights that, "in order for there to be an omission [that will satisfy Section 22.04(b)(1)], there must be a corresponding duty to act." *Billingslea*, 780 S.W.2d at 274. And current Section 22.04(b)(1), which existed when *Billingslea* was decided, but was not addressed there, does not dictate that the duty to act must be owed to any particular person.

## V. CONCLUSION

The Court concludes that Section 822.042(a) of the Health and Safety Code constitutes a "statutory duty to act" for purposes of Section 22.04(b)(1) of the Penal Code. The case is remanded to the court of appeals to reconduct its sufficiency of the evidence analysis and, if necessary, to address any other points of error raised on appeal.

**DELIVERED:**                                                  August 20, 2025
**PUBLISH**