

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00230-CR

RAY LEE COCKRELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 22F1263-102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion on Remand by Chief Justice Stevens
Concurring Opinion on Remand by Justice Rambin

## MEMORANDUM OPINION ON REMAND

Ray Lee Cockrell's pit bulls left his property and attacked a neighbor's visiting grandchild, Nathan Smith,[1] while he was walking in the woods. On hearing this evidence, a Bowie County jury found Cockrell guilty of injury to a child by omission and assessed a sentence of thirty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.04(e) (Supp.).

In a prior decision, we found that injury to a child requires either a parent-child relationship or a statutory duty to act. *Cockrell v. State*, No. 06-23-00230-CR, 2024 WL 3709879, at *2 (Tex. App.—Texarkana Aug. 8, 2024) (mem. op., not designated for publication), *rev'd and remanded*, No. PD-0760-24, 2025 WL 2417047 (Tex. Crim. App. Aug. 20, 2025). Because Cockrell did not have a parent-child relationship with Nathan, we analyzed whether, as a matter of first impression, Section 822.042 of the Texas Health and Safety Code, which contains a duty to secure dangerous dogs, could provide that statutory duty to act. *Id.* at *1. We looked to the fact "that nothing in Section 822.042 . . . provide[d] that omissions under that Section constitute[d] a criminal offense" and that the statute did not contain any duty to prevent injury to Nathan. *Id.* at *3 (citing TEX. HEALTH & SAFETY CODE ANN. § 822.042). Even though the State "'[a]dmit[ed]' that this statute 'does not explicitly state a criminal responsibility/punishment for failure to uphold the legal duty contained within,'" the State was "attempting to use that statute to impose first-degree criminal liability" for injury to a child. *Id.* (first alteration in original). We found the State's argument incongruent with the Texas Court of

---

[1]We use pseudonyms to protect the identity of "any person who was a minor at the time the offense was committed." TEX. R. APP. P. 9.10(a)(3).

Criminal Appeals' opinion in *Billingslea v. State*, 780 S.W.2d 271, 274 (Tex. Crim. App. 1989),[2] and determined that, if the State's position was correct, "any violation of the Texas Transportation Code, such as speeding or failure to stop at a stop sign, could result in first-degree liability for injury to a child if a child is injured as a result," which in our view would lead to results inconsistent with existing law. *Id.*

The Texas Court of Criminal Appeals reversed, reasoning that because Section 822.042 uses the word "*shall* immediately preceding the list of requirements imposed on a person who learns they are the owner of a dangerous dog," the statute imposes a mandatory duty. *Cockrell*, 2025 WL 2417047, at *5.[3] As a result, the Court remanded the case to us to "reconduct [a] sufficiency of the evidence analysis and, if necessary, to address any other points of error raised on appeal." *Id.* at *8.

In addition to legal sufficiency of the evidence, Cockrell argues on appeal that the indictment failed to allege an offense and the trial court's jury charge was improper. On remand, based on the Texas Court of Criminal Appeals' majority opinion in *Cockrell*, 2025 WL 2417047, we find that the indictment properly alleged an offense and that the evidence was legally

---

[2]In *Cockrell*, the Texas Court of Criminal Appeals found *Billingslea* superseded by statute. *Cockrell*, 2025 WL 2417047, at *8.

[3]Judge McClure wrote to "underscore a broader concern," addressed by Justice Gorsuch, "regarding the need for legislative clarity to ensure that criminal liability does not arise unexpectedly or unfairly." *Id.* at *9 (McClure, J., concurring) (citing NEIL M. GORSUCH, OVER RULED: THE HUMAN TOLL OF TOO MUCH LAW (2024)). Reasonably so because, for example, the word "shall" is often used in the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 544.004(a) ("The operator of a vehicle or streetcar shall comply with an applicable official traffic-control device."); 547.321(a) ("A motor vehicle shall be equipped with at least two headlamps."); 552.0036(1) ("A sidewalk user approaching an intersection with a stop sign shall . . . stop before entering the crosswalk."). Judge Finley filed a dissenting opinion, joined by Judges Newell and Walker, declining to endorse the majority's interpretation because the "discussion of statutory duties in *Billingslea* . . . and its progeny resolves this case." *Cockrell*, 2025 WL 2417047, at *9.

sufficient to support the finding of guilt.  We also find that Cockrell was unharmed by any jury-charge error.  As a result, we affirm the trial court's judgment.

## I.   The Indictment Alleged an Offense

Cockrell filed a motion to quash the indictment on the ground that it did not allege an offense.  On appeal, he argues that the trial court erred by denying it.  "The sufficiency of an indictment [presents] a question of law."  *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).  Accordingly, we review the denial of a motion to quash de novo.  *Id.*; *State v. Zuniga*, 512 S.W.3d 902, 906 (Tex. Crim. App. 2017).

To determine whether an indictment provides adequate notice to the defendant, we (1) "identify the elements of the offense" and (2) "consider whether the statutory language is sufficiently descriptive of the charged offense."  *Zuniga*, 512 S.W.3d at 907.  Even if an indictment contains a defect, we will not overturn the trial court's decision unless the defendant's substantial rights were prejudiced by the defect.  TEX. CODE CRIM. PROC. ANN. art. 21.19.

A person commits injury to a child by omission if he "intentionally, knowingly, or recklessly by omission, causes to a child . . . serious bodily injury."  TEX. PENAL CODE ANN. § 22.04(a)(1) (Supp.).  Under this statute, an omission that causes the injury is an offense only if "the actor has a legal or statutory duty to act" or "the actor has assumed care, custody, or control of a child."  TEX. PENAL CODE ANN. § 22.04(b) (Supp.).

Here, the State's indictment in this case alleged that Cockrell,

hereinafter referred to as the Defendant, heretofore on or about September 5, 2022, did then and there, intentionally or knowingly by omission, cause serious bodily injury to [Nathan Smith], a child 14 years of age or younger, by allowing a canine dangerous to humans and/or livestock to roam free and/or failed to register

4

the dangerous dog with the animal control authority for the area in which the dog is kept and/or failed to restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure and/or failed to obtain liability insurance coverage or show financial responsibility of at least $100,000 to cover damages resulting from an attack by the dangerous dog causing bodily injury to a person and provide proof of required liability insurance coverage or financial responsibility to the animal control authority for the area in which the dog is kept and/or comply with an applicable municipal or county regulation, requirement, or restriction on dangerous dogs and Defendant had a statutory or legal duty to act, namely: Texas Health and Safety Code Chapter 822.042(a) and/or Texas Health and Safety Code Chapter 822.042(b).

(Emphasis omitted).

A plain reading of the indictment shows that the State alleged Cockrell caused serious bodily injury to Nathan by omission. Thus, the only question remaining is whether the State alleged a legal or statutory duty to act, and the Texas Court of Criminal Appeals has settled the matter by finding that Section 822.042 supplies that statutory duty. *See Cockrell*, 2025 WL 2417047, at *6.

Accordingly, "[n]ot later than the 30th day after a person learns that the person is the owner of a dangerous dog," the law places that person under several duties. TEX. HEALTH & SAFETY CODE ANN. § 822.042(a) (Supp.).[4] One of the duties imposed on the owner of a

---

[4]Section 822.042(a) states the following:

> (a)     Not later than the 30th day after a person learns that the person is the owner of a dangerous dog, the person shall:
> (1)     register the dangerous dog with the animal control authority for the area in which the dog is kept;
> (2)     restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure;
> (3)     obtain liability insurance coverage or show financial responsibility in an amount of at least $100,000 to cover damages resulting from an attack by the dangerous dog causing bodily injury to a person and provide proof of the required liability insurance coverage or financial responsibility to the animal control authority for the area in which the dog is kept; and

5

dangerous dog is "at all times" to keep the dog on a leash or in a "secure enclosure."  TEX.

HEALTH & SAFETY CODE ANN. § 822.042(a)(2).  A "[s]ecure enclosure" is defined as

a fenced area or structure that is:

    (A)     locked;
    (B)     capable of preventing the entry of the general public, *including children*;
    (C)     capable of preventing the escape or release of a dog;
    (D)     clearly marked as containing a dangerous dog; and
    (E)     in conformance with the requirements for enclosures established by the local animal control authority.

TEX. HEALTH & SAFETY CODE ANN. § 822.041(4) (emphasis added).  Since children, like

Nathan, are among those protected by the duties imposed on an owner of a dangerous dog,

Section 822.042 imposed a duty on Cockrell to restrain his dogs to prevent Nathan's injuries.

The State alleged that Cockrell had a legal duty, pursuant to Section 822.042, to act by

keeping dangerous dogs in a secured enclosure, that Cockrell knowingly failed to do so, and that

Cockrell's omission caused bodily injury to Nathan.  As a result, we find the indictment

sufficient to allege the crime of injury to a child by omission.  Because the indictment was

sufficient to allege an offense, we overrule Cockrell's first point of error.

**II.     The Evidence is Legally Sufficient to Support the Finding of Guilt**

In his second point of error, Cockrell challenges the sufficiency of the evidence.

---

     (4)     comply with an applicable municipal or county regulation, requirement, or restriction on dangerous dogs.

TEX. HEALTH & SAFETY CODE ANN. § 822.042(a).

## A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)).  "Our rigorous review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)).  "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).  "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).  "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

### B.     Sufficient Evidence Proved the Required Mens Rea

We have already discussed the State's indictment and the required elements above. Cockrell's sufficiency complaint alleges only that the State failed to prove Cockrell caused injury to Nathan with the required mens rea. We will determine if sufficient evidence shows that Cockrell knowingly caused serious bodily injury to a child by his omission.

Injury-to-a-child offenses under Section 22.04 are "result-oriented" and "requir[e] a mental state that relates not to the specific conduct but to the result of that conduct." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). "A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b). "[W]hen the conduct is an omission, proof that a defendant knowingly caused the result requires evidence that the defendant was aware with reasonable certainty the injury

8

would have been prevented had the defendant performed the act that was omitted." *Patterson v. State*, 46 S.W.3d 294, 302 (Tex. App.—Fort Worth 2001, pet. ref'd).

The evidence here shows that Cockrell was aware that his dogs were dangerous. Curtis Cole, an officer with the Bowie County Sheriff's Office (BCSO), testified that Cockrell's dogs were so aggressive toward him that he had to remain inside his vehicle until Cockrell was able to put the dogs up so that Cole could hand Cockrell a notice showing that his dogs were dangerous to animals. The jury heard that, on August 13, 2021, a BCSO officer spoke to Cockrell after Donald Poindexter reported that he had been attacked by Cockrell's dogs while riding a scooter. Taylor Ravin, who was eighteen at the time of trial, testified that she was walking past Cockrell's home in "broad daylight" on May 30, 2022, when approximately twenty-five dogs came up to her and "all started biting at [her]." Ravin stated she was on the ground and "pretty much blacked out," with her clothes "ripped off of [her]" when she was rescued by her grandfather, who drove up with his truck, pulled Ravin into it, and took her to the hospital. Ravin's grandfather testified that the pack of "15, 20 dogs or more" "had [Ravin] to the ground, stripped [her] nude, and w[ere] biting her all over," placing Ravin "like in shock." The State showed the jury photographs of Ravin's many puncture wounds from the attack. Ravin's grandfather went to speak to Cockrell, who had found Ravin's clothes after the attack, and told Cockrell that his dogs were "dangerous" and they "needed to go."

Ravin's attack alone was sufficient to show that Cockrell knew his dogs were dangerous. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 822.041(2)(A), 822.042(a). Even so, Cockrell decided not to restrain his dangerous dogs. The question is whether he was aware, with

9

reasonable certainty, that doing so would have prevented the injury. *See Patterson*, 46 S.W.3d at 302.

Cockrell was previously told numerous times by BCSO and others to restrain his dangerous dogs in a secure enclosure. Because he chose not to, his dogs attacked both Poindexter and Ravin. From this evidence, the jury could rationally infer that, after Ravin's brutal attack, Cockrell was aware that failing to properly restrain his dogs would result in serious bodily injury to another person. Accordingly, we find the evidence legally sufficient to prove that Cockrell was aware with reasonable certainty that the serious bodily injury to Nathan would have been prevented had he properly restrained his dogs. Because we find the evidence legally sufficient to support the jury's finding, we overrule Cockrell's second point of error.

## III. Cockrell Was Not Harmed by the Alleged Jury-Charge Error

In his last point of error, Cockrell complains of the trial court's jury charge. "We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

The application paragraph permitted the jury to find Cockrell guilty if they found he "had a statutory or legal duty to act, namely: Texas Health and Safety Code Chapter 822.042(a) and/or Texas Health and Safety Code Chapter 822.042(b)." Cockrell argues that the word

10

"Chapter" should have been replaced by the word "Section" and that, because there is no Chapter 822.042 in the Texas Health and Safety Code, "the statute alleged as a duty in this case fails to permit the imposition of criminal responsibility for the omission." The State notes, "Technically, it is incorrect," but describes the language as an "inartful lapse."

For the purposes of our analysis, we will assume error. Since Cockrell did not object to the jury charge on this ground, the trial court will be reversed "only in the event that the record demonstrates that the error resulted in egregious harm." *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988)).[5] "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). "Actual harm is established when the erroneous jury instruction affected 'the very basis of the case,' 'deprive[d] the defendant of a valuable right,' or 'vitally affect[ed] a defensive theory.'" *Id.* (alterations in original) (quoting *Cosio*, 353 S.W.3d at 777).

Here, nothing suggests that Cockrell was actually harmed by the replacement of "Section" with "Chapter." Cockrell has cited no cases in support of his claim showing that an error like the one here is egregiously harmful. The trial court's general instructions properly referred to Section 822.042 and provided the jury with the correct text of that statute. We simply

---

[5]Cockrell cites to other objections made to the jury charge, but those objections do not comport with the argument made on appeal. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). As a result, we conclude that Cockrell did not raise his appellate jury-charge complaint with the trial court.

see no support in the record for the contention that Cockrell was egregiously harmed by the use of "Chapter 822.042" instead of "Section 822.042." As a result, we overrule Cockrell's last point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

CONCURRING OPINION ON REMAND

I concur to address the mens rea requirement because it is a "limiting principle" in the statute. *See Cockrell*, 2025 WL 2417047, at *7 n.11 (citing *Williams*, 235 S.W.3d at 750) ("A limiting principle is inherently embedded within Section 22.04's *mens rea* requirement."). This limiting principle is important first and foremost because the Legislature created it. In addition, I shared, and still share, my colleagues' concerns regarding the potential for other first-degree felony convictions for injury to a child the defendant does not know based on the importation of any number of yet-to-be-identified, statutory duties into the injury-to-a-child-by-omission statute. *Cockrell*, 2024 WL 3709879, at *4–6 (Rambin, J., dissenting). Further, I concur because prior to the decision of the Texas Court of Criminal Appeals, I would have reformed the judgment to a second-degree felony. *See id.* In light of the decision of the Texas Court of Criminal Appeals, I would no longer do so.

12

With that in mind, I turn to the meanings of "reasonably" and "substantial[ly]." TEX. PENAL CODE ANN. §§ 6.03(b), (c).

Under Section 6.03(b) of the Texas Penal Code, "[a] person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is *reasonably* certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b) (emphasis added); *Price v. State*, 457 S.W.3d 437, 443 (Tex. Crim. App. 2015) (finding that a jury charge with "reasonably certain" correctly defined the "knowing[]" mens rea). Under Section 6.03(c),

> [a] person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a *substantial* and unjustifiable *risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (emphasis added).

"Substantial" is a word used in *Williams*, but in a slightly different way. *Williams*, 235 S.W.3d at 755. As noted above, *Williams* spoke specifically to the limiting principle of the mens rea requirement in Section 22.04 of the Texas Penal Code. *See Cockrell*, 2025 WL 2417047, at *7 n.11 (citing *Williams*, 235 S.W.3d at 750). *Williams*, however, worked from the bottom up, exploring the dividing lines between injury to a child due to civil negligence, criminal negligence, and criminal recklessness, as recklessness is used in Section 22.04(a) and defined in Section 6.03(c). *Williams*, 235 S.W.3d at 750, 753. To ascertain where the line is crossed from those lesser states of mind to the more culpable criminal recklessness, *Williams* cataloged prior cases that presented instances of "conscious risk creation" sufficient to constitute recklessness under Texas law. *Id.* at 754–55 (examining "reckless injury cases"). *Williams* states, "As noted

13

in the Model Penal Code commentaries, [conscious risk creation] 'resembles acting knowingly in that a state of awareness is involved, but the awareness is of risk, that is of a probability less than *substantial* certainty[.]'" *Id.* at 755 (second alteration in original) (emphasis added) (citation omitted).[6] In short, *Williams* linked criminal recklessness to conscious risk creation, and conscious risk creation to awareness that serious bodily injury would *probably* result. *Id.* at 754–55. An *implication* could be taken from *Williams* that "substantial certainty" marks the dividing line between recklessness and knowing conduct. *Id.* at 755 (citation omitted). *Williams*, however, was not directly addressing that line. *Id.* at 745 ("We granted appellant's petition for discretionary review to examine the culpable mental state of recklessness.").

Nonetheless, I took that implication. *See Cockrell*, 2024 WL 3709879, at *4–6. I did so because our Court was faced with a statute that had been on the books since the late-1980s, but had not been used as it was here anywhere in Texas at any point in the 1990s, 2000s, 2010s, or the years of the 2020s up to that point. I did so because of *stare decisis*. "The doctrine of *stare decisis* indicates a judicial preference for maintaining consistency with past decisions." *In re Green*, 713 S.W.3d 843, 853 (Tex. Crim. App. 2025) (orig. proceeding). Or more precisely,

---

[6]Model Penal Code aside, the concept of "conscious risk creation" was already a longstanding part of Texas manslaughter law: "The offense of manslaughter 'involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards it.'" *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005) (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). Manslaughter is generally a second-degree felony. TEX. PENAL CODE ANN. § 19.04(b) (Supp.). Murder is generally a first-degree felony. TEX. PENAL CODE ANN. § 19.02(c) (Supp.). But murder often requires proof that the defendant knowingly caused death or intentionally engaged in "an act clearly dangerous to human life" for the purpose of causing serious bodily injury, but the act causes death. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Supp.). Here, fortunately, there was no death. For that reason, Cockrell's ongoing failure to protect the public from his dogs, as outrageous as it was, seemed to me more akin to the second-degree felony of manslaughter (which involves conscious risk creation) than the first-degree felony of murder. *See Cockrell*, 2024 WL 3709879, at *4 (Rambin, J., dissenting) ("Cockrell's conduct was reprehensible. That does not mean it was a first-degree felony under the untested legal theory used by the State, a theory which the State says it could apply to every Texan."). But those were my thoughts before the theory was tested in the Texas Court of Criminal Appeals.

14

vertical *stare decisis*: "[u]nder vertical stare decisis, lower courts have practically no discretion to revisit a case issued by a higher court regardless of whether it involves a constitutional, common-law, or statutory question." *Phelps v. State*, 532 S.W.3d 437, 443 n.6 (Tex. App.—Texarkana 2017, pet. ref'd). "Consequently, it would seem that a lower court could never consider the validity of an opinion issued by a higher court on a statutory question." *Id.* Because Section 22.04 was being used in a new way, there was no Texas Court of Criminal Appeals case directly addressing such use. That left our Court to assess whether this new use was consistent with the decisions of the Texas Court of Criminal Appeals that dealt with Section 22.04 and the statutes invoked by Section 22.04,[7] albeit under circumstances that did not quite match what we have here (whether because the factual scenario was different or because the statute was amended after the decision being consulted).

In particular, I looked to the scenario of letting a 350-pound lion, which was neither muzzled nor declawed, out of its cage at a flea market populated by children, a scenario presented by *Durkovitz v. State*, 771 S.W.2d 12 (Tex. App.—San Antonio 1989, no pet.), and discussed in *Williams* as an example of recklessness via conscious risk creation. *See Cockrell*, 2024 WL 3709879, at *4–6 (citing *Williams*, 235 S.W.3d at 754; *Durkovitz*, 771 S.W.2d at 13–14). I saw in that support for importing the statutory duty and reason for reforming the judgment to a second-degree felony. *Id.* ("The plain text of Section 22.04(b)(1) itself does not limit which duties may be imported." "In sum, while I see enough in *Durkovitz* and *Williams* to guide the

---

[7]Such as the mens rea standards of Section 6.03.

disposition of Cockrell's case, I would want more before settling on a construction of Section 22.04(b)(1).").

But now there is more. Now there is a Texas Court of Criminal Appeals decision directly addressing the new use of Section 22.04. Now the construction of Section 22.04(b)(1) is settled. *Cockrell*, 2025 WL 2417047, at *6, *8 (Section "22.04(b)(1) does not plainly limit what statutory duties from outside the Penal Code can form the basis for liability under the statute." "Section 22.04(b)(1) . . . does not dictate that the duty to act must be owed to any particular person."). In coming to that conclusion, the Texas Court of Criminal Appeals emphasized that the plain language of the Legislature's enactments control: "Simply put, we do not disturb policy decisions of the Legislature." *Id.* at *4. Further, the Texas Court of Criminal Appeals had the option to reform the judgment itself. *See Lang v. State*, 664 S.W.3d 155, 176 (Tex. Crim. App. 2022) ("[T]his is one instance where reformation is appropriate."). The Texas Court of Criminal Appeals did not reform the judgment itself. *See Cockrell*, 2025 WL 2417047, at *8. Instead, the Texas Court of Criminal Appeals remanded, with an instruction to this Court "to reconduct its sufficiency of the evidence analysis." *Id.* This is significant because my colleagues had nothing to reconduct. Having found the importation of duty to be improper, they did not conduct a sufficiency of the evidence analysis. *See Cockrell*, 2024 WL 3709879, at *1.[8]

---

[8]Relatedly, there would be no need to conduct a sufficiency of the evidence review if, as a matter of law, Cockrell could not be charged with a first-degree felony. The Texas Court of Criminal Appeals held that Cockrell, and others, could be. *Cockrell*, 2025 WL 2417047, at *7, n.11 ("Both in the court of appeals and at oral argument, there was concern regarding the propriety of subjecting individuals to a potential term of ninety-nine years' imprisonment for violating what might be considered a broad statute. . . . But the Legislature itself addressed these concerns." (citation omitted)).

16

The only sufficiency of the evidence analysis was mine. *Id.* at *7. What follows, therefore, is my reconduction.

What the Legislature says goes. Whereas before I was attempting to piece together an estimation of what the Texas Court of Criminal Appeals might do, now they have done it. Speaking directly to this new use of Section 22.04, the Texas Court of Criminal Appeals stated, "When construing statutes, we begin with the language of the statute itself." *Cockrell*, 2025 WL 2417047, at *4. "Generally, when 'the plain language is clear and unambiguous, our analysis ends[.]'" *Id.* at *4 (alteration in original) (quoting *Long v. State*, 535 S.W.3d 511, 520–21 (Tex. Crim. App. 2017)).

What the Legislature said is that "[a] person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b); TEX. PENAL CODE ANN. § 22.04(e) (Supp.) ("An offense . . . is a felony of the first degree when the conduct is committed intentionally or knowingly.").

I retract my prior reading of *Williams* as indicating that "substantial certainty" marks the dividing line between recklessness and knowing conduct. The respective statutory definitions in Section 6.03 set those boundaries. Taking this statutory-centric approach avoids the questions and complications that might arise from a definitional round-robin tournament of comparing "probability" and "substantial certainty" from *Williams*, 235 S.W.3d 742 at 755 (citation

17

omitted), with "reasonably certain" from Section 6.03(b), TEX. PENAL CODE ANN. § 6.03(b), and "substantial and unjustifiable risk" from Section 6.03(c), TEX. PENAL CODE ANN. § 6.03(c).[9]

I join in today's opinion finding the evidence sufficient for a reasonable jury to conclude that Cockrell was aware that failing to contain his dogs in a secure enclosure (or to take other steps mandated by Section 822.042 of the Texas Health and Safety Code) was reasonably certain to cause serious bodily injury to a child. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.042 (Supp.).

Jeff Rambin
Justice

Date Submitted:    September 15, 2025
Date Decided:    October 7, 2025

Do Not Publish

---

[9]In other words, I thought that "probability" was associated with "conscious risk creation" which was akin to recklessness, all of which was less than "substantial certainty" and knowing conduct. How much less? That is a question the round-robin tournament would have resolved. But now I would look only to the statutory definitions. To put this in more concrete terms, *Williams* cited the *Durkovitz* lion scenario as an example of recklessness. But looking at the definition of knowing conduct in Section 6.03(b) ("reasonably certain") a tamer who takes his lion on a stroll could be charged with a first-degree felony like a murderer if his lion causes a child serious bodily injury. "That decision is within the purview of the Legislature, and we are bound not to encroach upon its policy decisions." *Cockrell*, 2025 WL 2417047, at *7.

18